

FILED
HOLLY EATON COURT CLERK
CANADIAN COUNTY, OKLAHOMA

APR 1 8 2025

BY
DEPUTY

**IN THE DISTRICT COURT OF CANADIAN COUNTY**
**STATE OF OKLAHOMA**

**1. KRISTINA CRIST**
   **PLAINTIFF,**

v.

**1. CANADIAN COUNTY EX REL**
**BOARD OF COUNTY**
**COMMISSIONERS**

**2. ROY CHRIS WEST a/k/a CHRIS**
**WEST, individually and in his capacity**
**as the Sheriff of Canadian County**

**3. WESLEY WAYNE HUNTER,**
**individually and in his capacity as a**
**Sheriff's Deputy of Canadian County**
   **DEFENDANTS.**

**CASE NO: CJ-2025-** 350

**Jury Trial Demanded**
**Attorney's Lien Claimed**

KHRISTAN K. STRUBHAR

## PETITION

**COMES NOW THE PLAINTIFF,** Kristina Crist, by and through counsel,

individually for her Petition against Defendants Deputy Wesley Wayne Hunter ("Hunter"),

Sheriff Roy Chris West ("West"), the Board of County Commissioners of Canadian County

("Defendant Canadian County" or "Board") (collectively, "Defendants"), states as follows:

### I.    PARTIES

1. Plaintiff Kristina Crist is a resident of Oklahoma and/or suffered her injuries in

while in the care, custody, and control of Deputy Wesley Wayne Hunter employed with

the Canadian County Sheriff's Office.

2. At all times relevant to this action, Plaintiff was in the custody of Defendant

Canadian County as a pretrial detainee and/or a post-trial detainee due to her prior

**Exhibit 2**

conviction and arrest on a recalled bench warrant issued in Canadian County case CF-2020-177.

3. Defendant Wesley Wayne Hunter is an individual currently in the custody of the United States Department of Corrections and on information and belief resided in Canadian County at the time the acts complained of occurred.

4. Defendant Hunter is a former Sherriff's Deputy who, at all times relevant to this action, was employed by the Canadian County Sheriff's Office ("CCSO").

5. Defendant Hunter is being sued in his Individual and Official Capacity.

6. Defendant Roy Chris West a/k/a Chris West is the duly elected Sheriff of Canadian County and is a resident of the State of Oklahoma, Canadian County.

7. Deputy Hunter is Native American and a member of the Caddo Nation holding a Certificate of Degree of Indian Blood Card.

8. At all times relevant to this action, Defendant West is responsible for the oversight and operation of the Canadian County Sheriff's Department and its deputy sheriffs, including hiring, tactical operations and training, discipline, supervision, and screening of deputy sheriffs.

9. Defendant West is sued in his Individual and Official Capacity.

10. Defendant Canadian County is a political subdivision of the state of Oklahoma and is responsible for the oversight and operation of the CCSO, including budgeting, human resources, facility management, developing and implementing personal policies and approving salaries, entering into contracts on behalf of counties, approving expenditures for tactical operations and training, overseeing discipline, supervision, and screening of

2

**Exhibit 2**

employees and other management and administrative policy making for all divisions of a county.

11. Defendant Canadian County is responsible for voting on and approving cross-deputization and/or other mutual aid agreements between Canadian County, the CCSO, Oklahoma Tribal Nations, other Oklahoma Counties, and other arms of state, federal, tribal, and municipal governments.

12. Defendant Canadian County acts by and through the Board of County Commissioners for Canadian County which is comprised of three independently elected county officials.

13. The Board of County Commissioners for Canadian County is the chief administrative body for the county and, "by law...must act as a board when entering into contracts or other agreements affecting the county's welfare," such as the Cross Deputization Agreements between Defendant Canadian County and the Bureau of Indian Affairs or mutual aid agreements with other counties, municipalities, tribes, and state agencies.

14. Actions taken by the Board of County Commissioners for Canadian County "are voted on and approved by a majority of the commissioners."

15. Defendant Canadian County is a necessary party to this litigation as the policy maker responsible for approving and implementing the Cross Deputization Agreement and Mutal Aid Agreements between the County and Tribal Authorities and other state and local governments.

3

**Exhibit 2**

16. The adoption of interlocal and interstate agreements like mutual aid and cross deputization agreements is necessary for the proper management of a governmental entity whose daily operations are intertwined by another sovereign entity such as the Chickasaw Nation, Plaintiff's Tribe, or Cheyenne Arapaho Nation tribal lands relative to this case.

17. Defendant Canadian County and Defendant West act as joint policymakers for the Canadian County Sheriff's Office and for the Cross Deputization Agreement between Canadian County and any tribal nation.

18. At all times relevant to this action, Defendant West, as Sherriff of Canadian County, had the charge and custody of the jail of his county, and all the prisoners in the same, and shall keep such jail himself, or by his deputy or jailer, for whose acts he and his sureties shall be liable. 19 O.S. §513.

19. Defendant County is statutorily and constitutionally obligated to provide for the County Jail. 57 O.S. §41.

20. Defendant County is also statutorily and constitutionally obligated to provide for the County Courthouse.

21. Additionally, the County has a federal constitutional and state statutory duty to provide medical treatment for inmates in custody and this extends to the protection necessary for the safekeeping of individuals in custody.

22. The Canadian County Sheriff's Office and/or County have or should have engaged in cross-deputization or other agreements with tribal authorities related to the arrest, detention, and housing of Native Americans and/or is a party to agreements with the Federal Government to house and/or transport federal prisoners.

4

**Exhibit 2**

23. At all times relevant to this action, Defendants Hunter and West, and other deputies working for the Canadian County Sheriff's Department were working as on or off duty licensed Oklahoma peace officers acting under color of state law and within the scope and course of their official duties and employment as officers.

24. At all times relevant to this action, Defendants were not working pursuant to a mutual aid, deputization or other tribal agreement with the any tribal nation and were not acting under color of tribal law or sovereignty.

25. The acts complained of herein were ongoing and occurred not only during the time when Crist was initially arrested and assaulted but were ongoing from the time Crist was picked up by Hunter in 2023 through her most recent transportation and/or incarceration by Canadian County in November 2024.

## II.    JURSIDICTION AND VENUE

26. Upon information and belief, all Defendants reside in Canadian County, Oklahoma, for purposes of this action.

27. Personal jurisdiction is proper pursuant to 12 O.S. §2004(f) and venue is properly laid pursuant to 12 O.S. §133.

28. On or about July 22, 2024[1], Plaintiff properly gave notice of this tort claim pursuant to 51 O.S. §151 et seq., to the Canadian County Court Clerk and Canadian County Sheriff's Office and, accordingly, has complied with all pre-filing requirements set forth therein. Because such claim was not approved within the ninety (90) day statutory period, the same

---

[1] July 20, 2024 was a weekend so the next business day of July 22, 2024 is timely for the filing of the tort claim pursuant to Oklahoma statutes.

**Exhibit 2**

has been deemed denied on October 21, 2024, for purposes of this litigation pursuant to 51 O.S. §157(A). **See Tort Claim attached as Exhibit 1.**

29. Plaintiff has timely brought this action within one hundred eighty (180) days of said denial, and prior to the 2-year deadline for the date of discovery of her causes of action.

### III.    RELEVANT FACTS

30. Only July 17, 2023, Kristina Crist was arrested at the Choctaw Casino in Durant Oklahoma on a Canadian County arrest warrant in case CF-2020-177.

31. Crist was booked into the Bryan County Jail on the same day.

32. Crist was taken into Canadian County's Custody at the Bryan County Jail near Durant, Oklahoma.

33. On July 20, 2023, CCSO Deputy Wesley Wayne Hunter volunteered to transport Crist from Bryan County to Canadian County.

34. Hunter told Crist he picked her for transport, indicating that he chose individuals for transport he knew were vulnerable to his advances.

35. During the transport, Crist, was raped by Canadian County Deputy Wesley Hunter, while Deputy Hunter was transporting her in his CCSO vehicle to the Canadian County Jail.

36. A Probable Cause Affidavit was filed in the United States District Court for the Eastern District of Oklahoma in case 23-CR-0195 US v. Hunter, on 10/31/2023 alleging Wesley Wayne Hunter knowingly caused another person to engage in a sexual act by using force against that person thereby committing Aggravated Sexual Abuse in Indian Country

**Exhibit 2**

in Violation of Title 18 US Code §2241(a)(1), 1151, and 1153. **See Exhibit 2, Probable Cause Affidavit dated 10/31/2023.**

37. Hunter engaged in grooming behaviors prior to the assault designed to disarm Crist including buying Crist food and drinks which is or should be a violation of CCSO and County Policy.

38. Hunter did not announce his route or departure time to the CCSO prior to departing from Bryan County.

39. Hunter told Crist that he could turn off his GPS (global positioning system) device for six minutes without anyone asking any questions and then proceeded to deactivate the device.

40. Hunter then departed from the appropriate transportation route and drove to what was at the time an unknown deserted location with three barns.

41. Hunter made statements to Crist which indicated that she was not the first or only inmate he has sexually assaulted while in the course and scope of his job with CCSO.

42. Hunter was able to turn off his GPS without arousing concern or suspicion because GPS is used through a phone app which is known by Canadian County and/or the CCSO to go offline in certain areas of the state due to lack of cellular service.

43. All CCSO Deputies know about this limitation to the system and about the lack of monitoring or periodic checking of their GPS logs.

44. West has been advised that this and the lack of cameras creates a risk to the inmates and the Officers by other Deputies and chosen to disregard such warnings.

7

**Exhibit 2**

45. During a subsequent criminal investigation, it was discovered that Hunter had in fact turned off his GPS just east of Highway 70 and Antioch Road in Marshall County Oklahoma. **See Exhibit 2**.

46. While at this location Hunter vaginally raped Crist on the side of the roadway while she was handcuffed and pressed up next to the side of the CCSO vehicle. *Id*.

47. Deputy Hunter spread Crist's legs and locked them to disable her and raped her while she was handcuffed. *Id*.

48. Hunter also made threats to Crist about disclosure of the rape telling her he knew where her daughter was and would hurt her if she told. *Id*.

49. Hunter did not use a condom or any form of protection from sexually transmitted disease and exposed Crist to all nature of sexually transmitted diseases and blood and fluid borne pathogens as well as pregnancy. *Id*.

50. Hunter ejaculated inside Crist and left semen both inside her vagina and on her clothing. *Id*.

51. Hunter told Crist to clean herself up with fast food napkins that were in the car. *Id*.

52. Crist was afraid that Deputy Hunter would shoot her and leave her in the field to die, claiming that she tried to escape. *Id*.

53. Crist was afraid to disclose her assault while in the custody of the CCSO for fear of retaliation and that evidence of her rape would disappear due to misconduct by the CCSO. *Id*.

54. The sexual assault occurred within Marshall County and the historical boundaries of the Chickasaw Nation.

**Exhibit 2**

55. Approximately ten minutes after turning the GPS off, Hunter turned it back on a short distance west of Antioch Road.

56. Canadian County did not review or investigate Hunter's GPS being out of range or being turned off prior to criminal investigators seeking this information in response to Crist's reporting of the rape.

57. CCSO would not have investigated Hunter's status absent a report and had no policy of periodic monitoring and comparing route reported versus routes driven by Deputies during transport despite a history of sexual assaults by CCSO deputies which occurred before the assault of Crist.

58. Crist underwent a Sexual Assault Nurse Examiner (SANE) examination after her release, and her clothes were taken into evidence. *Id.*

59. Eyewitnesses confirmed the presence of the CCSO vehicle in the area described by Crist, consistent with the GPS data, and observed two individuals outside the vehicle engaging in the conduct described by Crist. *Id.*

60. The napkins described by Crist were located at the scene, photographed, and collected by the Oklahoma State Bureau of Investigation (OSBI) as evidence.

61. A DNA test was performed on the collected clothing and napkins and matched Hunter. *Id.*

62. The napkins and Crist's clothes were subjected to DNA testing which confirmed sexual contact with Hunter.

63. On July 31, 2023, a DNA search warrant was obtained for Deputy Hunter, and he was arrested and transported to the Marshall County Jail.

**Exhibit 2**

64. Hunter was booked for Second Degree Rape in Marshall County.

65. Deputy Hunter was later transferred to federal custody due to his status as a registered member of the Caddo tribe and the criminal conduct occurring on federal land.

66. The assault was investigated by the Oklahoma State Bureau of Investigation and the Federal Bureau of Investigation.

67. Deputy Hunter has been charged for his conduct by the Chickasaw Nation in case CF-2023-486.

68. Deputy Hunter has also been charged in the United States District Court for the Eastern District of Oklahoma in case 2023-CR-0195-35344.

69. The FBI analyzed the GEOSafe GPS data. *Id.*

70. A Superseding Indictment was filed against Hunter on April 10, 2024 in case 23-CR-0195 with three counts – (1) Aggravated Sexual Abuse in Indian Country, (2) Deprivation of Rights Under Color of Law, and (3) Falsification of Records. **See Exhibit 3, Superseding Indictment of Hunter.**

71. Deputy Hunter pled guilty on June 5, 2024, to Count Three of the Superseding Indictment in violation of 18 USC §1519, Destruction, Alteration, or Falsification of Records in a Federal Investigation. **See Exhibit 4, Petition to Enter Plea of Guilty dated 06/05/04.**

72. In his plea agreement, Deputy Hunter admitted that

    a.   He performed the government function of picking up individuals who wer arrested on Canadian County, Oklahoma warrants and transporting those individuals back to Canadian County Oklahoma.

**Exhibit 2**

    b.  As part of his duties he was required to comply with the Constitution and laws of the United States.

    c.  On July 20, 2023 he picked up Kristina Crist to transport her to the CCSO.

    d.  While performing his duties and transporting for the CCSO, he "knowingly altered, concealed, covered up or falsified a CCSO record or tangible object by deactivating GeoSafe, a first responder Global Positioning System (GPS) mobile tracking system, on my CCSO work phone, before I pulled the CCSO patrol car I was driving off the transport route to Canadian County."

    e.  Deputy Hunter "took this action to conceal my criminal misconduct that followed and impede any future investigation into that criminal misconduct."

73. The U.S. Attorney and Deputy Hunter agreed that a range of punishment of 41-70 months is an appropriate disposition of the case.

74. On January 31, 2025, Hunter was sentenced to 70 months in the custody of the Federal Bureau of Prisons.

75. Deputy Hunter was also charged with Aggravated Sexual Abuse in Indian Country in violation of 18 USC §§ 2241(a), §2246(2)(A), §1151 and §1153 and Deprivation of Rights Under Color of Law in violation 18 USC §§ 242 and § 250(b)(1).

76. On January 30, 2025, the Chickasaw Nation filed Rape in the Second Degree against Wesley Wayne Hunter for the rape of Crist in case CF-2025-0054.

77. Hunter plead guilty to rape in the second degree on April 16, 2025, and was sentenced to 3 years incarceration with 18 months to be served and the remainder to be suspended. The sentenced is to be concurrently with his federal charges.

11

**Exhibit 2**

## HISTORY OF OTHER SEXUAL ASSAULTS INVOLVING THE CCSO

78. Canadian County Inmate Jennifer Clark was sexually assaulted by CCSO Deputy David Loman while in transport in 2021.

79. Canadian County Inmate Kaci Fox was sexually assaulted by CCSO Deputy David Loman while in transport in 2022.

80. An unnamed Canadian County Inmate was sexually assaulted by CCSO Deputy Raven Benson in 2021.

81. Deputy Loman is being prosecuted related to Clark and Fox. Benson is being prosecuted related to her assault.

82. Nevertheless, after these assaults were discovered and prior to Ms. Crist's assault, the CCSO and Canadian County failed to take corrective action to protect inmates, particularly female and juvenile inmates.

83. Other allegations have been made against Deputies employed with the Canadian County Sheriff's Office in regard to sexual improprieties with inmates and individuals under the care, custody or control of the CCSO.

84. On information and belief, a current CCSO Deputy resides with a former inmate or individual under the care, custody and control of the CCSO and their sexual relationship began during the Deputy's employment.

85. Members of the public have made allegations about sexual improprieties by employees of the CCSO during West's time in office and such employees were allowed to resign in lieu of investigation or prosecution.

**Exhibit 2**

86. The CCSO has hired individuals, including but not limited to David Randall with a history of alleged sexual improprieties that the CCSO either knew of or should have known of had a proper pre-hiring investigation been performed and said individuals were hired anyway.

87. On August 8. 2024, Davis Randall was charged with the crime of sexual battery which occurred on August 11, 2023. The sexual battery occurred while David Randall was acting in the course and scope of his duties as a CCSO Deputy.

88. On October 5, 2023, West issued a discipline notice to CCSO Deputy David Randall over a complaint against him received for inappropriate sexual communications and behaviors between Randall and females who were in the custody of the CCSO and out of custody while at the Courthouse. **See Exhibit 5, Randall Notice of Discipline.**

89. The investigation division "sustained" the allegations against Randal and West described the conduct as "unprofessional and beneath the dignity of the office and the law enforcement profession. Id.

90. The October 5, 2023 discipline is believed to include the allegations of the events of August 11, 2023 which involve sexual battery of an individual utilizing the services of the CCSO.

91. After being disciplined for sexual improprieties with adult females under the care, custody and control, West reassigned Randall to the Canadian County Juvenile Justice Center where he was in contact with vulnerable youth.

92. Despite allegations of at least 4 CCSO Deputies having engaged in inappropriate sexual relations with inmates prior to the allegations against Randall, West allowed Randall

**Exhibit 2**

to remain on staff with confirmed findings of inappropriate sexual behaviors with females in and out of custody.

93. Further, Randall resigned in lieu of termination from his prior position as a Chief of Police due to sexual harassment, yet West hired him as a Deputy anyway.

94. Further, the County, who is responsible for overseeing HR and hiring for all of Canadian County, allowed Randall to be hired with his history of sexual improprieties and allowed Randall to remain employed after confirmed inappropriate sexual behaviors. *Id.*

95. Randall was terminated on March 28, 2024 after further allegations of sexual improprieties were made. *Id.*

96. Despite at least six confirmed sexual assaults by CCSO Deputies, the Board and the CCSO have failed to correct the deficits that led to these assaults and/or implement proper policies and procedures to protect inmates.

97. The County Commissioners for Canadian County and the CCSO knew or of these assaults prior to the transport of Kristina Crist due to criminal court filings and investigations involving these Deputies in 2021 and 2022, yet no action was taken to protect Crist or other inmates after these assaults were discovered.

98. There is a pattern of conduct and failure to protect inmates in custody by both Canadian County and the CCSO who jointly have duties to oversee and manage employee operations and jail operations.

99. Canadian County did not review or investigate Deputy Hunter's GPS being out of range or being turned off prior to criminal investigators seeking this information in response to Crist's reporting of the rape.

**Exhibit 2**

100.    CCSO would not have investigated Deputy Hunter's status absent a report and had no policy of periodic monitoring and comparing routes reported versus routes driven by Deputies during transport.

101.    Deputy Hunter was able to turn off his GPS without arousing concern or suspicion because GPS is used through a phone app which is known to go offline in certain areas of the state due to lack of cellular service.

102.    All CCSO Deputies know about the limitations to the GPS system and the lack of monitoring or periodic checking of their GPS logs.

103.    Sheriff West has been advised that this limitation, along with the lack of cameras, created a risk to inmates and Officers by other Deputies, but he chose to disregard such warnings.

104.    There is no standard procedure for reporting departure time, route, or mileage when transporting inmates, particularly female or juvenile inmates, who are at high risk of sexual assault by law enforcement.

105.    The CCSO and the Sheriff have failed to monitor or supervise the GPS or location of the transport vehicles, allowing transport deputies to drive to secluded locations.

106.    The CCSO and the Sheriff have failed to monitor or supervise what was occurring inside of the vehicles by not maintaining audio or video recording devices inside of the vehicles.

107.    The CCSO and the Sheriff have permitted male deputies to transport female inmates alone, in the front seat of the vehicles, and even allowed the male deputies to pick transports involving female inmates.

**Exhibit 2**

108.    Even after the assaults of Clark, Fox, and Crist were reported, Clark and Crist continued to be transported in a way that violates law enforcement standards and places her at risk.

109.    The Canadian County Commissioners have failed to investigate the assaults and to ensure that there are proper policies and procedures in place for the transportation of inmates.

110.    The Commissioners have failed to call for an investigation into the jail and implement policies in response to the multiple allegations of sexual assault and sexual impropriety at the Canadian County Jail.

111.    From the moment that she entered the custody of the CCSO, Crist was molested, degraded, threatened, and sexually assaulted by Deputy Hunter.

112.    Clark, Crist, and Fox were placed in fear for their safety while in custody with the Canadian County Jail.

113.    Clark, Crist, and Fox was humiliated and scared as a result of their assaults.

114.    Crist suffers from PTSD as a result of her assault.

115.    Deputy Hunter threatened Crist to force compliance and provided food, goods, services, and things of value to Crist to compensate her for his sexual behavior and to force her into compliance and not to disclose his assault and illegal conduct.

116.    Deputy Loman engaged in similar behavior toward Clark and Fox.

117.    Under no circumstances is sexual contact between a law enforcement officer and an inmate lawful. Inmates are not capable of giving lawful consent to engage in sexual activity with law enforcement, and such contact is forbidden by law.

**Exhibit 2**

118.    The Canadian County Sheriff's Office, Loman, Randal, Benson, and Hunter all utilized the channels and instrumentalities of interstate commerce that are provided to them by the Canadian County Sheriff's Department as the tools to perform their job to effectuate the acts complained of herein and the ongoing acts of commercial sexual assault and trafficking of women under the care, custody and control of the CCSO.

119.    The tools and instrumentalities of interstate commerce utilized by Hunter, Loman, Randall, Benson, West, and the Canadian County Sheriff's Department include but are not limited to cellular telephones, landline telephones, police radios, the GEOSafe GPS tracking application, a computer, the internet, the interstates including Interstate 40 and 70, state highways, tribal lands and highways, law enforcement databases, equipment purchased with federal dollars, vehicles which were purchased, maintained, driven, and produced in interstate commerce and paid for with federal dollars, and other police equipment provided to Hunter,  Loman, Benson, Randall, and West by the Canadian County Sheriff's Office and Canadian County.

120.    Kristina Crist was transported in a Canadian County Sheriff's Patrol vehicle on US Interstates and Oklahoma State Highways across and through multiple tribal reservations, including but not limited to the Chickasaw Nation and the Cheyenne and Arapaho Tribe, during her time in the custody of Canadian County, the Canadian County Sheriff, and Wesley Hunter, during the time of her initial arrest and incarceration when she was sexually assaulted by Wesley Hunter.

17

**Exhibit 2**

121.     Wesley Hunter was prosecuted under the laws of the United States rather than the State of Oklahoma based on the acts occurring on tribal lands and his status as a Native American.

122.     Canadian County and the CCSO funds its operations through the receipt of federal tax dollars and federal grants including the use of federal dollars related to programs designed to protect women under the Violence Against Women Act, under the CARES Act and other federal grants and tax dollars.

123.     Canadian County and the CCSO also fund operations through money collected from detainees through purchases in the commissary, use of paid telephone, text and other services, court costs and fines which are collected for court proceedings.

124.     Canadian County and the CCSO utilizes equipment including radios and cellular phones with funds granted to or appropriated to it through federal tax and grant funds having been awarded such funds on a multiyear basis.

125.     On information and belief, Defendant Hunter was employed with Canadian County from in 2022 through 2023.

126.     Between 2021 and 2023, three female inmates being transferred by Canadian County Sheriff Deputies were sexually assaulted using CCSO vehicles purchased and distributed in interstate commerce.

127.     Between 2021 and 2024, multiple other pretrial and post-trial detainees reported being sexually harassed and/or sexually assaulted by Canadian County Deputies within the Canadian County Courthouse and/or Canadian County Sheriff's Department facilities by Deputies including but not limited to Randal, Benson, and Loman.

18

**Exhibit 2**

128.     Between 2021 and 2024, multiple female attorneys appearing in Canadian County have disclosed being sexually harassed and touched in a lewd and lascivious manner by Deputy Randall and feeling unsafe to report the harassment for fear of retaliation by Canadian County and/or the CCSO.

129.     These sexual assaults occurred as a result of the unconstitutional conditions of confinement, authorized, and approved by Defendant West, under which these women in the care, custody, and control of CCSO.

130.     The sexual harassment occurred as a result of the failure of Canadian County and Sheriff West to put in place such conditions, policies, and procedures to protect detainees, attorneys, and members of the general public from being sexually harassed or assaulted in a building under the control and management of Canadian County, being the Canadian County Courthouse.

131.     Jennifer Clark was assaulted in September 2021, Kaci Fox was assaulted in April 2022, and Kristina Crist was assaulted in July 2023. A male victim was assaulted in the jail between December 1, 2021, and February 28, 2022.

132.     Jennifer Clark and Kaci Fox were transported by Defendant Loman and Kristina Crist was transported by Deputy Wesley Hunter.

133.     The involved Deputies have made comments to these women which suggest that they were neither the first nor the only individuals each of these Deputies have assaulted.

**Exhibit 2**

134.    Upon information and belief, Canadian County Sherriff Deputies have, and continue to, demonstrate a pattern and practice of sexually assaulting female inmates in Canadian County custody, and performing sexual misconduct in general while on duty.

**A. The Sexual Assault of Jennifer Clark**

135.    Plaintiff was charged with the crime of Trafficking In Illegal Drugs, in violation of 63 O.S. 2-415 in Canadian County Case CF-2019-614.

136.    On March 11, 2020, Plaintiff pled guilty to this charge and was given a seven-year suspended sentence except for the first 114 days to serve in the Canadian County Jail.

137.    Plaintiff signed a probation contract as part of her terms and conditions of the suspended sentence.

138.    On January 6, 2021, the Canadian County District Attorney filed an application to revoke the suspended sentence, and a bench warrant for Plaintiff's arrest was issued on the same date.

139.    The warrant was returned on February 25, 2021, and bond was posed for Plaintiff on March 3, 2021.

140.    On March 8, 2021, a bench warrant was issued against Plaintiff for an apparent failure to appear on February 16, 2021.

141.    Plaintiff was arrested on August 26, 2021, for the outstanding bench warrant in Pottawatomie County, Oklahoma.

142.    Plaintiff repeatedly told CCSO, Loman, and Pottawatomie County that she did not have a warrant and that the bench warrant was cleared.

**Exhibit 2**

143.    Instead of properly checking with the Court Clerk's Office and the Court records to determine if there was a mistake the CCSO sent Loman to pick up Clark.

144.    Loman had a pattern and practice of asking or seeking out female detainees to transport.

145.    Loman, Hunter, Randal and other employees of CCSO had a pattern and practice of targeting women who would be transported over long distances, from rural areas, of Native Americans descent with history addiction or crimes involving dishonesty believing that such women were less likely to tell or be believed for any allegations.

146.    Loman, Hunter, Randal and other employees of CCSO had a pattern and practice of targeting women who were of Native American descent because they would be from rural areas giving them more opportunity to stop and sexually assault them along the route to/from the CCSO without arousing suspicion and without substantially deviating from the expected route.

147.    On August 31, 2021, Defendant West sent Loman or Loman volunteered to go  to Pottawatomie County to transport Plaintiff to the Canadian County Jail.

148.    Defendant West dispatched Loman, a male officer, without the benefit of a body worn camera or a vehicle dashboard camera to record the transportation of Plaintiff, a female inmate.

149.    Defendant West dispatched Loman, a male officer, without the accompaniment of a female officer or witness to ensure the safety of Plaintiff and others like her.

**Exhibit 2**

150.    Upon information and belief, Defendant West had a pattern and practice of allowing male officers to transport female inmates — both pretrial and post-conviction inmates — without the benefit of proper safety mechanisms such as vehicle dashboard cameras, body cameras, use of female Deputies or witnesses, and/or without proper policies and procedures to document travel and to protect the constitutional rights of inmates.

151.    Loman intentionally sought the opportunity to transport Plaintiff in order for the opportunity to sexually assault her.

152.    Defendant West failed to ascertain, acquiesced, and/or intentionally disregarded why Defendant Loman intentionally sought out to transport female inmates.

153.    Loman drove his Canadian County police vehicle to Pottawatomie County and picked up Plaintiff.

154.    When Defendant Loman arrived to pick up Plaintiff, Plaintiff was wearing street clothes and not dressed in jail scrubs.

155.    Loman, while acting in his capacity as a Sheriff's Deputy employed by the Canadian County Sheriff's Office, proceeded to transport Plaintiff from Pottawatomie County Jail to Canadian County Jail in a Canadian County vehicle.

156.    Loman was paid to transport Plaintiff from Pottawatomie County to Canadian County.

157.    Loman is believed to have been picking up extra shifts he was not scheduled for to transport women across Oklahoma.

158.    Loman placed Plaintiff in the front seat of the vehicle, as opposed to the back seat.

**Exhibit 2**

159.    Prior to placing Plaintiff in the vehicle, Loman altered her restraints by cuffing her hands in front rather than back if she promised him "she would be good."

160.    Placing an inmate in the front seat is a deviation from policy.

161.    After placing Plaintiff in the front seat of the vehicle, Defendant Loman departed from the Pottawatomie County Jail, pulled across the street, and parked the vehicle.

162.    At that point, Loman stated that he needed to perform a "search" on Plaintiff, incident to her transportation, because she had acquired a packet of Kool-Aid at the Pottawatomie County Jail and it was in her pocket.

163.    Loman then proceeded to pull Plaintiff out of the vehicle and grope her breast, buttocks, and genital area under the guise of doing a pat down "search" for his safety.

164.    Such a search for safety purposes should have (1) been unnecessary as Plaintiff had been in custody for 4 days and should have been searched by Pottawatomie County Staff prior to her departure; (2) if necessary, should have been performed before placing Plaintiff in the vehicle and in the view of the Pottawatomie County Jail.

165.    Loman did not advise the CCSO that he was stopping to search Plaintiff or that he had deviated from his route.

166.    Defendant Loman then received a call from Canadian County personnel to confirm whether he had specific equipment in his possession. After confirming this information, Defendant Loman also confirmed whether Canadian County "really wanted

**Exhibit 2**

her or not," telling Plaintiff that if they did not "really want her," he would take her wherever she wanted to go, including to her home.

167.    On the call, Canadian County confirmed the transport and Defendant Loman confirmed serial numbers on equipment in the vehicle.

168.    Loman did not report his mileage and time of departure when he left the Pottawatomie County Jail or while parked at the first gas station.

169.    After he departed from this stop, Loman began engaging Plaintiff in casual conversation about what she wanted to do and asking if she was hungry or thirsty.

170.    Clark responded that she wanted a Coke to drink.

171.    Loman then told Plaintiff that his vehicle was "Like Vegas. What happens in my car stays in my car."

172.    Loman then drove to a gas station, parked the vehicle, and left it running with the keys inside, while he went inside the store to purchase Plaintiff a Coke.

173.    Loman then gave Plaintiff the Coke to drink.

174.    After driving away from the gas station, Loman began to talk to Plaintiff in a sexually suggestive, but also threatening and controlling, manner.

175.    Loman made statements about being attracted to her, but also demeaning her and exerting his power and control over her.

176.    Loman then proceeded to reach over to Plaintiff and play with the straps of her top, caressing her shoulder and rubbing her breasts.

177.    At this point, Plaintiff moved as close to the passenger door of the vehicle as possible but was unable to get out of Defendant Loman's grasp.

24

**Exhibit 2**

178.     Loman then unzipped his pant zipper, took out his penis, and began to stroke his penis, while he continued to make sexual remarks to Plaintiff.

179.     At or about the same time, Loman also reached over and grabbed at Plaintiff's breasts and the top of Plaintiff's pants.

180.     Loman continued to grab at Plaintiff and attempted to make her touch his penis with her handcuffed hands while he masturbated and drove.

181.     Loman continued to masturbate in order to obtain an erection while intermittently grabbing at Plaintiff's breasts and genitals, as he drove down the highway.

182.     Clark feared for her life due to the threatening nature of Loman, the knowledge that she was being sexually assaulted and the fear of getting into a wreck from his driving.

183.     Loman at some point puts his fingers into Clark's vulva, penetrating the folds of her labia, and touching her clitoris in an attempt to sexually arouse her.

184.     Eventually, Lohman and Clark arrived in Canadian County, where Loman told her that he had to take a detour to check on his cattle because he had problems with a farmhand.

185.     At this point, Loman pulled off of the highway and drove down county roads that were not on the way to the Canadian County Jail.

186.     Eventually, Loman stopped the vehicle, exited the vehicle, and walked around to the passenger side of the vehicle.

187.     Loman proceeded to open the passenger-side door and pull Clark out of the vehicle.

**Exhibit 2**

188.    Loman then began to forcefully insert his penis into Clark's mouth, subjecting her to the act of forcible oral sodomy.

189.    As Loman was orally sodomizing Clark, a car drove by the location, which made Defendant Loman nervous.

190.    Loman then forcibly stuck his hands down Clark's pants and into her underwear, against her will, touching her clitoris and labia, and attempted to digitally penetrate her vagina with his fingers.

191.    Loman then physically moved Clark back into the vehicle, closed the passenger-side door, and drove away from the scene, afraid that he had been seen.

192.    As Loman drove Clark the rest of the way to the jail, he threatened her with physical force and stated:

    a.  "its your word against mine."

    b.  "I'll make sure you go to jail."

    c.  "You're a criminal and I'm a cop. No one will believe you."

193.    Loman was not criminally charged and/or investigated for the sexual assault of Plaintiff by Canadian County District Attorney or the Sheriff's Office.

194.    In response to allegations of sexual assault, CCSO disregarded Clark and continued to demean and harass her since reporting and during her incarceration making her stay in Canadian County intentionally hostile, demeaning, and scary.

195.    Clark was incarcerated in Canadian County from September 23, 2021, through November 19, 2021 where she was subject to fear, force, and intimidation of silence by Loman.

**Exhibit 2**

196.    It was not until late May 2022, after information was released to the media that multiple Canadian County Deputies were sexually assaulted detainees and inmates in the custody and control of the CCSO that Clark had any reason to believe that CCSO knew or should have known about the conduct of Loman or that Loman's conduct was anything other than his own independent criminal conduct outside the course and scope of his duties.

197.    Clark filed her notice of tort claim against the CCSO and Canadian County in March and April 2023.

198.    When the media released multiple stories about the sexual assault of inmates and detainees by the staff of the CCSO there was a clear failure of policy and procedure in Canadian County or that the CCSO was suborning this conduct.[2][3]   Despite these clear failure, West and the County failed to take action to protect Crist and the victims of Randall and others.

**B. The Sexual Assault of Kaci Fox.**

199.    On May 16, 2022, the Yukon Progress published an article, which stated that Defendant Loman was arrested for sexually assaulting another inmate, the headline read "Sheriff's deputy arrested for allegedly sexually assaulting inmate."[4]

---

[2] See Article on Raven Benson published May 20, 2022,  https://yukonprogressnews.com/2022/05/20/canadian-county-jailer-charged-with-rape/.
[3] Multiple news reports about the allegations of David Loman sexually assaulting Fox were released May 16 and May 19, 2022.   https://kfor.com/news/local/former-deputy-arrested-for-allegedly-assaulting-inmate/  and https://www.kswo.com/2022/05/19/osbi-finds-canadian-county-sheriffs-deputy-sexually-assaulted-inmate/ about his pattern of criminal conduct and https://www.elrenotribune.com/news/part-time-deputy-resigns-over-sexual-assault-claim.
[4] See  https://yukonprogressnews.com/2022/05/16/county-sheriffs-deputy-arrested-for-sexually-assaulting-inmate/ which is incorporated herein by reference.

**Exhibit 2**

200.     On the same day, KOKH Fox 25 also ran a similar story regarding Loman.[5]

201.     The KOKH articles stated that OSBI determined that Loman assaulted a woman in Marshall, Carter, and Jefferson Counties, and that he was charged with forcible sodomy, sexual battery, and engaging in a pattern of criminal offenses.

202.     A Probable Cause Affidavit was filed in Carter County, but the same was not accessible online due to the nature of the alleged crimes and Defendant Loman was not formally charged criminally until November 16, 2022, in Jefferson County Oklahoma in case CF-2022-19.

203.     In the Probable Cause Affidavit for Warrant of Arrest, filed on November 16, 2022, Tony Navarro a Special Agent for the FBI, alleged that Kaci Fox filed a report on April 12, 2022, stating that Defendant Loman sexually battered and forcibly sodomized her during transport from Marshall County to Canadian County. **See Exhibit 6, Loman Probable Cause Affidavit and Information.**

204.     The circumstances surrounding the sexual assault of Fox are also strikingly similar to the sexual assault of Plaintiff. *Id.*

205.     Fox was picked up in a small rural town in Indian Country related to drug charges.

206.     Loman engaged in sexual battery of Fox by groping her breast and genitals. *Id.*

207.     Loman transported Fox in the front seat of his vehicle. *Id.*

---

[5] See https://okcfox.com/news/local/david-wayne-loman-canadian-county-deputy-arrested-sexual-assault-marshall-carter-jefferson-sodomy-inmate which is incorporated herein by reference.

**Exhibit 2**

208.    Loman left Fox alone in the vehicle while he went inside to another location. *Id.*

209.    Loman allowed Fox to have a pleasure of freedom – smoking a cigarette – like he did with Clark – buying her a coke.

210.    Loman then took Fox to a rural location where he orally sodomized her telling her to "suck my dick," much like he did to Clark.

211.    Loman then threatened Fox and Clark like Hunter threatened Plaintiff.

212.    Loman also told Fox and Clark that he had transported other women and had taken them home, even when they were released just as he did with Plaintiff.

213.    Loman drove Fox through Indian Country and stopped in remote locations that were along his appropriate route to minimize suspicion of his journey.

214.    Based on this information, Defendant Loman was charged with 1 count of sexual battery. *Id.*

215.    On October 6, 2023, an Amended Information was filed adding Count 2 – Pattern of Criminal Offenses related to the sexual assaults of Plaintiff and Fox. **See Exhibit 7, Amended Information in CF-2022-52, Oklahoma v. Loman, Jefferson County.**

216.    On December 27, 2023, a Second Amended Information was filed against Defendant Loman, adding Counts 3 and 4. Count 3 was Forcible Sodomy for oral sodomy of Kaci Fox and County 4 was Rape by Instrumentation of Kaci Fox for digitally penetrating Kaci Fox. **See Exhibit 8, Second Amended Information in CF-2022-52, Oklahoma v. Loman, Jefferson County.**

**Exhibit 2**

217.    Clark was identified as a witness in the Amended Information and the Second Amended Information. **See Exhibits 7 and 8.**

218.    The allegations related to Loman's the pattern of criminal conduct includes the allegations related to the crimes against Jennifer Clark.

219.    The conduct of David Loman and Wesley Hunter was knowing and intentional and constitutes criminal human trafficking, sexual battery, rape by instrumentation, and forcible oral sodomy.

220.    Clark only learned of Defendant Loman's pattern of acts after the news articles were published on May 16, 2022, about his particular arrest.

## C. SEXUAL ASSAULT BY CCSO DEPUTY RAVEN BENSON.

221.    On May 20, 2022, there were other news stories published about CCSO Deputy Raven Benson who raped an inmate in jail and her prosecution.

222.    While Benson's alleged rape occurred between December 2021 and February 2022, the allegations did not become public until May 2022, and Benson was employed with the CCSO until April 2022.

223.    No later than April 2022, West and Canadian County knew or should have known of a clear problem involving the sexual assault of women in the care custody and control of the CCSO.

224.    Plaintiff was never incarcerated with Clark, Fox or the inmate sexually assaulted by Benson so she had no way of learning about the pattern of conduct which was kept quiet among the inmates due to fear of reprisal.

**Exhibit 2**

225.    On August 1, 2023, KOKH Fox 25 published a story about Plaintiff's sexual assault.[6]

226.    Hunter, like Defendant Loman, stopped in a remote location in Indian Country and sexually assaulted Kristina Crist.

227.    Hunter threatened Crist over disclosure of the events. *Id.*

**D. Canadian County's Custom and Policy of Acquiescence and Encouragement of Sexual Impropriety by Officers While On Duty.**

228.    There is a known and well-settled custom and policy of allowing the sexual assault of females to occur by officers within the Canadian County Sheriff's Department.

229.    Prior to Crist's transportation by Hunter, Canadian County and West knew of at least three prior sexual assaults by CCSO Deputy's including two that specifically involved the transportation of female inmates across Indian Country and the lack of monitoring by GPS, video and other processes.

230.    Canadian County and West knew there were insufficient GPS monitoring and that women were being transported in the front seat of vehicles and that food, drinks, cigarettes and other things of value were being given to these women as compensation for sex acts.

231.    Further, Canadian County and West were trading on the use of the instrumentalities of interstate commerce specifically the I-40 corridor in Canadian County which is a known sex trafficking circuit to be featured on an streaming show Underage

---

[6]    See    https://okcfox.com/news/local/wesley-hunter-jr-former-canadian-county-deputed-accused-of-sexually-assaulting-inmate-marhsall-county-bryan-county-antioch-road-state-highway-70-arrest-osbi-oklahoma-state-bureau-investigation which is incorporated herein by reference.

**Exhibit 2**

Undercover for sex trafficking and using sex trafficking as a means of profit and promotion of the county policing activities.

232.     There is a pattern and practice of hiring and retaining men who have a clear distaste for women and who utilize their power and control as CCSO Deputies to control, dehumanize, and assault women in vulnerable positions.

233.     The CCSO receives monies through the Office on Violence Against Women ("OVAW") under the Violence Against Women Act ("VAWA"), a federal act, which was the first comprehensives legislative package designed to protect women and improve the criminal justice response to sexual assault, domestic violence, dating violence, stalking and to improve the availability of services for victims and survivors.

234.     The funds received from the OVAW are required to be used to provide law enforcement training focused on effectively identifying and responding to violent crimes against women relating to criminal conduct described under the act.

235.     The CCSO either failed to implement the training or allowed the training to be implemented in such a way the CCSO and weaponized the training received to further control and victimize women under their care custody and control.

236.     Forty percent (40%) of sex trafficking survivors are Native American or First Nations women.

237.     Yet Native Americans and Alaskan Natives make up approximately two percent (2%)of the overall U.S. population.

**Exhibit 2**

238.    Native American women are particularly vulnerable to being victims of sex trafficking and sexual assault due to their cultural history of trauma, family separation, high rates of addiction, and the absence of trauma informed care.

239.    Even when Clark disclosed her abuse and neglect in her criminal proceedings, the CCSO, the District Attorney's Office, and the Presiding Judge's response were not to order or demand an investigation but to blame the victim and discount her statements.

240.    Nothing about the court system or the CCSO promotes an individual like Crist, Clark or Fox feeling safe to come forward and reveal what happened to them when the very system that is designed to protect them and receives money to protect them stigmatizes them and blamed them when they reveal their assaults. Because of this clear pattern and practice, the culture at the CCSO has been allowed to proliferate and become the norm and not the exception as demonstrated but the multiple sexual assaults that have come out between 2021 and 2024.

241.    There is also a known and demonstrated pattern, and well-settled custom and practice of demonstrating favoritism within the Canadian County Sheriff's Department of individuals who engage in a certain sexually permissive lifestyle sanctioned and encouraged by Defendant West.

242.    Defendant West has a reputation for engaging in extramarital affairs and encourages his Deputies to engage in sexual impropriety, particularly while in a work setting.

**Exhibit 2**

243.    This direct encouragement from Defendant West promotes a sexually charged atmosphere, which is ripe for abuse of individuals under the care, custody, and control of the Canadian County Sheriff's Department.

244.    Defendant West has hired and/or continued to employ multiple individuals who have had allegations of sexual misconduct or improper behavior at the time of their employment and/or failed to take appropriate employment action against employees who are engaging in inappropriate sexual behavior on the job and/or with co-workers. Additionally, when improprieties are reported, Defendant West fails to take action and, instead, allows the offending parties to resign or takes no action, to wit:

> a. **Deputy Major John Bridges** - was accused of sexually assaulting and extorting a man for years for sex. The story made the news on his death as his dying wish was that the Deputy be brought to justice for the years of sexual abuse he wrought. Bridges was allowed to resign and no investigation was ever conducted by Defendant West. Additionally, the Canadian County District Attorney's Office never called for an independent investigation into the Sheriff's Office or brought charges.
>
> b. **Deputy Phil Blevins** – was hired by Canadian County Sheriff's Department while having been demoted and under investigation for inappropriate sexual behavior at work in Grady County. Defendant West testified under oath that he was not concerned about the allegations against Blevins when he was hired. Blevins also is

34

**Exhibit 2**

believed to have "lost" a case file and failed to take allegations of a sexual relationship between an adult and a minor seriously. Blevins was named as a party in the case *Doe v. Blevins*, 21-cv-797, WDOK, Doc 1 which is incorporated by reference. Blevins resigned in lieu of termination over his conduct and Defendant West knew or should have known this when he was hired.

c. **Deputy David Randall** – resigned in lieu of termination from his job as the Chief of Police with the City of Luther due to allegations of sexual harassment. Defendant West knew or should have known this when he hired Randall. Randall engaged in the sexual harassment of individuals including detainees, attorneys, and members of the public, throughout his employment with Canadian County, which includes the times that all three women were sexually assaulted. In October of 2023, Randall was disciplined for sexual impropriety directed towards inmates in and out of custody. Defendant West's solution was to put Randall in charge of transporting juveniles, which are at a greater risk of being sexually assaulted by a Deputy. Randall was not terminated until the spring of 2024 and was not criminally charged until the summer of 2024.

d. **Deputy A.F.** – is the Canadian County Sherriff's Department's internet sex crimes and child sex crimes forensic investigator. Allegations of inappropriate sexual behaviors toward citizens and

**Exhibit 2**

consumers of the Canadian County Sherriff's Department's services have been made against A.F. and no action has been taken against him. An Oklahoma DHS Worker made a complaint about A.F. behavior and no action was taken. Further, two Deputies, who made allegations against A.F. for inappropriate sexual behavior including showing child porn to inappropriate parties at the Canadian County Sheriff's Department were fired and A.F. kept his job. Said employees sued and Defendant West admitted that he did not take the allegations against A.F. seriously. On information and belief, these cases filed in the District Court of Canadian County were dismissed with prejudice following a settlement of all claims.

e.  **Deputy A.M.** – was known to be engaging in inappropriate sexual behaviors with other employees in the Canadian County Sheriff's Department and no action was taken against him by Defendant West or Canadian County.

f.  **Unknown Male Deputy** – Reports have been made of a female inmate becoming pregnant while under the custody and control of the Sheriff's Office. Said individual now resides with the deputy.

g.  **Deputy Raven Benson** – On May 4, 2022, Deputy Raven Benson was charged in Canadian County case CF-2022-276 for rape of an inmate and bringing contraband into a jail or penal institution for acts

36

**Exhibit 2**

occurring on December 1, 2021. Benson was employed and supervised by West at the time she committed the acts.[7]

245.    The behaviors of Loman, Hunter, Randall and Benson, described herein, were part of this well-settled custom and practice at the CCSO.

246.    In furtherance of this well-settled custom and practice, Defendants had a regular pattern and practice of transporting female detainees in the front seat of police vehicles and not the back seat of the vehicle.

247.    Defendant Canadian County knew of the location and whereabouts of Defendant Hunter during his work shifts through the tracking information on his police vehicle.

248.    Prior to the incidents with Defendant Loman and Hunter, Defendant West was advised to get cameras for the civil sheriff vehicles.

249.    Canadian County Sheriff's Deputies in the Civil Division transport inmates and people in custody.

250.    In April 2022, there were approximately 10 vehicles in Defendant Canadian County's use in the Civil Division for the purpose of the transportation of inmates. Only 1 vehicle had a camera in it.

251.    None of the Canadian County police vehicles in the Civil Division were equipped with a satellite-based GPS tracking system. All satellite tracking was and is still done by use of a GeoSafe phone or app.

---

[7] See https://www.oscn.net/dockets/GetCaseInformation.aspx?db=canadian&number=CF-2022-276&cmid=460468

**Exhibit 2**

252.    The GeoSafe phone or app relies on cellular service for transmission of a Deputy's whereabouts and it is known that Deputies can be without contact for a minimum of 6 minutes or longer without arising suspicion or concern.

253.    This use of unreliable GPS technology poses a risk of harm to both the inmates being transported and the Deputies being transported.

254.    Further, none of the Deputies, but for the exception of one, has a body camera to wear in the transportation of inmates in the Civil Division.

255.    Both before and after the sexual assaults in question, Defendant West was told that it was best practice, and in the best interest of the Department and the inmates, to mount cameras in police vehicles, better GPS tracking, and body cameras, but Defendant West refused to obtain the same.

256.    Defendant West has spent funds to acquire military grade equipment including two MRAP (Mine-Resistant Ambush Protected) vehicles but has failed to secure basic cameras to protect his officers, inmates, and the public.

257.    Further, there is no written policy and procedure governing the transportation of inmates — male, female, or juvenile — that ensures for the protection of the inmates or an upholding of their constitutional rights.

258.    There is no policy that requires Canadian County Deputies to state the time that they leave the pickup location or arrive at a drop off location with inmates.

259.    There is no policy that requires Canadian County Deputies to follow a specific transport route.

**Exhibit 2**

260.     There is no policy that requires Canadian County Deputies to state their starting and ending mileage for the trip.

261.     There is no policy that requires Canadian County Deputies to account for lengthy transport times.

262.     There is no policy that routinely or periodically checks GPS tracking and routes to ensure that Canadian County Deputies do not deviate from a specific route.

263.     There are no policies that require a female Canadian County Deputy to transport females or two Canadian County Deputies to transport females.

264.     Canadian County Deputies are allowed to transport inmates and detainees of the opposite sex in interstate and intrastate commerce for the benefit of the County and the Deputies.

265.     The only transport policy that exists in Canadian County is a juvenile transport policy, which states that female juveniles will be transported like female adults and that juveniles are more likely to commit dangerous acts to self or others so be extra careful when transporting juveniles.

266.     As a result of the attack by Defendant Hunter and the conduct of Defendants West and Canadian County, as described above, Plaintiff suffered and will continue to suffer damages, including physical, emotional, and mental trauma, medical expenses, pain, and suffering, emotional distress, and other economic and non-economic damages.

## IV.     CAUSES OF ACTION

### Pleading in the alternative

**Exhibit 2**

267.     Plaintiff was and has been held in custody awaiting hearings on both alleged probation violations and new charges. Courts are split on whether a person held on probation violations prior to adjudication on those alleged violations is considered a pretrial detainee triggering Fourteenth Amendment analysis or a convicted inmate triggering Eighth Amendment analysis. See *Kellum v. Bernalillo Cnty.*, 250 F. Supp. 3d 846, 852 (D.N.M. 2017); citing *Berry v. City of Muskogee, Okl.*, 900 F.2d 1489, 1493 (10th Cir. 1990). Accordingly, pursuant to Federal Rules of Civil Procedure 8(d)(2) and 8(e), and 12 O.S. §2008(A)(2), Plaintiff pleads her claims under the Fourth, Fourteenth, and Eighth Amendments, alternatively.    Further, where the facts allege may be construed to be inconsistent Plaintiff asserts the right to plead causes of action or claims under the alternate inconsistent theories which will be narrowed as discovery is conducted and certain specifics are determined, and the pleadings will be conformed therewith.

### COUNT I
### 42 U.S.C. § 1983 – Excessive Force/Bodily Integrity
### (Against Defendant Hunter)

268.     All preceding paragraphs are incorporated as if fully re-written herein.

269.     This claim is brought pursuant to Title 42 U.S.C. § 1983.

270.     Title 42 U.S.C. §1983 states, in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...."

**Exhibit 2**

271.    The Fourth Amendment to the United States Constitution states, in relevant part, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ."

272.    "Sexual assault intrudes into bodily security and is quite literally a 'seizure,' restricting freedom of movement even if briefly. An officer who sexually assaults someone while acting under color of law has seized the victim for Fourth Amendment purposes." *Hess v. Garcia*, 72 F.4th 753, 763 (7th Cir. 2023).

273.    The Eighth Amendment to the United States Constitution states, in relevant part, that "cruel and unusual punishments [shall not be] inflicted."

274.    The United States Supreme Court has long held that, under the Eighth Amendment to the United States Constitution, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." *Wilkins v. Gaddy*, 559 U.S. 34, 34, 130 S. Ct. 1175, 1176, 175 L. Ed. 2d 995 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 4, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)).

275.    Further, the Tenth Circuit has expressly acknowledged that an "inmate has a constitutional right to be secure in her bodily integrity and free from attack from prison guards." *Hovater v. Robinson*, 1 F.3d 1063, 1068 (10th Cir.1993). Indeed, "sexual abuse of a prisoner by a corrections officer has no legitimate penological purpose, and is simply not part of the penalty that criminal offenders pay for their offenses against society." *Graham v. Sheriff of Logan Cnty.*, 741 F.3d 1118, 1122–23 (10th Cir. 2013).

**Exhibit 2**

276.    Additionally, pretrial detainee is protected from excessive force while in custody by the Fourteenth Amendment. *Brown v. Flowers*, 974 F.3d 1178 (10th Cir. 2020).

277.    At all times relevant to this matter, Defendant Hunter was clothed with the authority of the state and misused that authority.

278.    While acting under color of state law, Defendant Hunter deprived Plaintiff of her well-established right to be free from excessive force, per the authority cited herein.

279.    At all times relevant to this action, Plaintiff had the well-established constitutional right not to be subjected to excessive force while being arrested and/or while in the custody of Canadian County.

280.    Defendant Loman used excessive force when he arrested and/or seized the person of and/or had Plaintiff in his custody when transporting her from the Pottawatomie County Jail to the Canadian County Jail, to wit:

      a.  Defendant Hunter threatened Plaintiff;

      b.  Defendant Hunter sexually touched and groped Plaintiff without any legitimate justification, consent, or any legal authority;

      c.  Defendant Hunter vaginally penetrated Plaintiff with his penis;

      d.  Defendant Hunter offered food, drink, and other benefits to entice, pay, and/or silence Plaintiff about his acts.

281.    These forced sexual acts constituted more force than was legally permissible and were, thus, violations of Plaintiff's constitutional rights.

282.    Defendant Hunter, through this conduct, acted maliciously and sadistically.

**Exhibit 2**

283.    Consent is not a defense to Hunter's actions as an individual under the care, custody and control of the CCSO is incapable of giving consent to sexual contact.

284.    As a direct and proximate result of Defendant Hunter's actions, Plaintiff experienced extreme pain and suffering, financial loss, and mental anguish, and emotional distress for which she seeks compensation.

## COUNT II
### 42 U.S.C. § 1983 – Substantive Due Process
### (Against Defendant Hunter)

285.    All preceding paragraphs are incorporated as if fully re-written herein.

286.    This claim is brought pursuant to Title 42 U.S.C. § 1983.

287.    Title 42 U.S.C. §1983 states, in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...."

288.    "[T]he Due Process Clause of the Fourteenth Amendment was intended to prevent government from abusing its power, or employing it as an instrument of oppression." *Collins v. City of Harker Heights*, 503 U.S. 115, 126, 112 S. Ct. 1061, 1069 (1992) (internal punctuation omitted).

289.    At all times relevant to this action, Plaintiff had the well-established constitutional right not to be subjected to said abuse while being arrested and/or while in the custody of Canadian County.

**Exhibit 2**

290.    At all times relevant to this matter, Defendant Hunter was clothed with the authority of the state and misused that authority.

291.    While acting under color of state law, Defendant Hunter deprived Plaintiff of her well-established substantive due process right to be free from government abuse, per the authority cited herein.

292.    Defendant Hunter deprived Plaintiff of her well-established substantive due process right to be free from government abuse when transporting her from the Bryan County Jail to the Canadian County Jail, to wit:

  a.  Defendant Hunter threatened Plaintiff;

  b.  Defendant Hunter sexually touched and groped Plaintiff without any legitimate justification, consent, or any legal authority;

  c.  Defendant Hunter vaginally penetrated Plaintiff with his penis;

  d.  Defendant Hunter offered food, drink, and other benefits to entice, pay, and/or silence Plaintiff about his acts.

293.    Defendant Hunter, through this conduct, intended to harm and/or place Plaintiff unreasonably at risk of harm.

294.    Defendant Hunter engaged in a deliberate, egregious, and outrageous invasion of Plaintiff's bodily integrity that shocks the conscience in violation of her rights under the Fourth, Eighth, and Fourteenth Amendment to the United States Constitution.

295.    As a direct and proximate result of Defendant Hunter's actions, Plaintiff experienced extreme pain and suffering, financial loss, and mental anguish, and emotional distress for which she seeks compensation.

**Exhibit 2**

**COUNT III**
**42 U.S.C. § 1983 – Equal Protection**
**(Against Defendant Hunter and West)**

296.    All preceding paragraphs are incorporated as if fully re-written herein.

297.    This claim is brought pursuant to Title 42 U.S.C. § 1983.

298.    Title 42 U.S.C. § 1983 states, in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...."

299.    "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439, 105 S. Ct. 3249, 3254 (1985).

300.    The Tenth Circuit "unequivocally held that 'sexual harassment ... can violate the Fourteenth Amendment right to equal protection of the laws.'" *Woodward v. City of Worland*, 977 F.2d 1392, 1398 (10th Cir. 1992) (citing *Starrett v. Wadley*, 876 F.2d 808 (10th Cir. 1989).

301.    At all times relevant to this matter, Defendant Hunter was clothed with the authority of the state and misused that authority.

**Exhibit 2**

302.    While acting under color of state law, Defendant Hunter deprived Plaintiff of her well-established right to sexual equality and equal protection of the laws, per the authority cited herein.

303.    Defendant Hunter deprived Plaintiff of her well-established right to sexual equality and equal protection of the laws when transporting her from the Bryan County Jail to the Canadian County Jail, to wit:

   a. Defendant Hunter, as a male officer, intentionally sought out to transport Plaintiff because she was a female inmate;

   b. Because Plaintiff was a female, Defendant Hunter ordered that Plaintiff spread her legs;

   c. Because Plaintiff was a female, Defendant Hunter sexually touched and groped Plaintiff without any legitimate justification, consent, or any legal authority;

   d. Because Plaintiff was a female, Defendant Hunter vaginally penetrated Plaintiff;

   e. Because Plaintiff was a female, Defendant Hunter forced Plaintiff to engage in unwanted sex with him;

304.    Defendant Hunter singled Plaintiff out and treated her differently because of her sex. As such, Defendant Hunter purposely discriminated against Plaintiff because of her sex.

305.    No man similarly situated would have been treated the same or subjected to the kind of sexual assault that Plaintiff was, by Defendant Hunter.

46

**Exhibit 2**

306.    Defendant Hunter's conduct, as described herein, was related to the powers and duties of his job and involved the use of his state authority and/or position.

307.    Defendant West had a policy and procedure of transporting  inmates that provided less protection to female pretrial and post adjudication detainees as compared to male detainees.

308.    Defendant West failed to have in place a policy and procedure of transporting female detainees, both juvenile and adult, that provided for their protection by:

a.  Utilizing dash and body cameras in the cars and on the persons of CCSO deputies during transports;

b.  Failing to require a female to be present or to transport female detainees;

c.  Failing to utilize and monitor GPS tracking of deputies during transports;

d.  Failing to require detailed disclosure of time, route, mileage, and other key data points when departing from and arriving at routes;

e.  Creating a work environment that allowed sexual impropriety and sexual harassment to prosper;

f.  Hiring deputies charged with transporting detainees without properly vetting their background for history of allegations of inappropriate sexual behavior;

g.  Failing to investigate allegations of inappropriate sexual behavior, assault and abuse when reported by inmates and detainees;

**Exhibit 2**

309.     Defendant West knew or should have known of the rights of female detainees, adult and juvenile to be safe and protected from sexual assault while in custody and in transportation and failed to implement policies and procedures to protect them.

310.     Even after Defendant West knew of multiple sexual assaults of inmates, he failed to make changes to or improve his policies and procedures leading to multiple additional individuals being assaulted at the Courthouse and in the custody of the CCSO.

311.     As a direct and proximate result of Defendant Hunter's actions and Defendant West's actions, Plaintiff experienced extreme pain and suffering, financial loss, and mental anguish, and emotional distress for which she seeks compensation.

### COUNT IV
### Supervisory Liability
### (Against Defendant West)

312.     All preceding paragraphs are incorporated as if fully re-written herein.

313.     This claim is brought pursuant to Title 42 U.S.C. § 1983.

314.     Defendant West is/was a supervisor of Defendant Hunter.

315.     At all times relevant to this action, Defendant West knew or reasonably should have known, and/or participated in, and/or condoned, and/or ratified Defendant Hunter's sexual assault of Plaintiff, as described herein.

316.     Defendant West knew or reasonably should have known that his acts and/or failures to act would likely cause the constitutional injury that befell Plaintiff because he:

        a. endorsed, promoted, encouraged, and/or failed to discipline Defendant Hunter's actions;

        b. kept Defendant Hunter employed at the Canadian County Sheriff's

**Exhibit 2**

Department and allowed him to continue to transport female inmates unaccompanied, despite prior instances of sexual misconduct and having reason to know he was unfit to do so; and

c. failed to train Defendant Hunter on the appropriate protocol when transferring female inmates, discipline Defendant Hunter for prior instances of sexual misconduct, or otherwise prevent Defendant Hunter from engaging in the above-stated conduct.

317.    As a result of his failures and abandonment of his supervisory duties, as stated above, Defendant West created an environment that condoned the aforementioned conduct and perpetuated and/or facilitated and/or aided Defendant Hunter in the unreasonably violent seizure and excessive force of Plaintiff's person when she was sexually assaulted against her will.

318.    Defendant West engaged in acts and omissions that were the product of a reckless and/or callous indifference to Plaintiff's constitutional rights, including training, endorsing, and/or condoning Defendant Loman's sexual misconduct in the manner detailed above.

319.    By his acts and failures to act as stated above, Defendant West in fact caused the deprivation of Plaintiff's constitutional rights, including violations of the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.

320.    As a direct and proximate result of Defendant West's actions and inactions, Plaintiff experienced extreme pain and suffering, financial loss, and mental anguish, and emotional distress for which she seeks compensation.

**Exhibit 2**

## COUNT V
### Municipal Liability pursuant to *Monell*
### (Against Defendant Canadian County and West)

321.    All preceding paragraphs are incorporated as if fully re-written herein.

322.    This claim is brought pursuant to 42 U.S.C. § 1983.

323.    Municipal bodies, like Defendant Canadian County, are liable for constitutional violations under 42 U.S.C. § 1983 when execution of their official policies or customs deprives an individual of rights protected by the Constitution. *Monell v. Dep't of Soc. Servs. Of City of New York*, 436 U.S. 658, 694 (1978).

324.    Official policies or customs can result from: (a) a formal regulation or policy statement; (b) an informal custom amounting to a widespread practice that, although not authorized by written law or express policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (c) the decisions of employees with final policymaking authority; (d) the ratification of such final policymakers of the decisions, and the basis for them, of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (e) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

325.    A municipality is liable under § 1983 when its agency's policy or custom, as evidenced in any of the manners set forth above, is "closely related" to the ultimate constitutional injury suffered by the plaintiff, and/or causes or occasions the constitutional violation. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).

**Exhibit 2**

326.    Defendant West is the top policymaker for the Canadian County Sheriff's Department.

327.    Defendant Canadian County maintains a police force, the Canadian County Sheriff's Department, with the power to arrest and detain citizens.

328.    Defendant Canadian County is also ultimately responsible for the assignment of personnel for training and disciplinary purposes.

329.    Defendant Canadian County is aware that its officers engage in a pattern and practice of violent and inappropriate sexual conduct that involves excessive force in violation of the Fourth, Eighth , and Fourteenth Amendments.

330.    This pattern and practice with respect to sexual misconduct towards inmates and the failure of Canadian County to discipline officers for sexual misconduct is part of a larger pattern of excessive force through sexual impropriety that has been pervasive within the Canadian County Sheriff's Department in recent years and under Defendant West's supervision.

331.    The result is an unwritten policy or custom within the Canadian County Sheriff's Department of encouragement and acquiescence of sexual impropriety by officers while on duty.

332.    This policy or custom is known to Defendant West and they have approved, ratified, encouraged, sanctioned, and/or promoted this policy or custom throughout the Canadian County Sheriff's Department.

333.    Following the sexual assault of Plaintiff, Defendant West continues to approve, ratify, encourage, sanction, and/or promote this policy or custom as they

**Exhibit 2**

expressed support for sexual impropriety of officers while on duty, imposed no discipline on Defendant Loman, and changed none of the officer training the Canadian County Sheriff's Department.

334.    Defendant Canadian County is also liable under *Monell* because the department's training, decision-making, and policy-making with respect to the proper transfer and treatment of inmates, appropriate conduct of officers in relation to sexual behavior, and training officers about these matters, is so inadequate that it shows Canadian County's deliberate indifference to the constitutional rights of citizens, particularly inmates/detainees.

335.    Under *City of Canton v. Harris*, liability may attach to a municipality if "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton*, 489 U.S. at 390.

336.    The above-mentioned circumstances show "the need for more or different training," as the Supreme Court put it in *City of Canton v. Harris*.

337.    Canadian County's toleration of and failure to discipline officers who engage in excessive force through sexual assault and misconduct is evidence that Plaintiffs' injuries are traceable to the City's custom of encouraging and acquiescing to sexual impropriety by officers while on duty, and it is evidence that the County has acted with deliberate indifference in failing to supervise its officers. *See, e.g., Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997) (stating that "an act performed

**Exhibit 2**

pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law").

338.    Upon information and belief, Defendant Hunter and Deputy Loman had demonstrated conduct similar to the actions taken against Plaintiff, both before and after the incident.

339.    In accordance with Canadian County's custom and practice in failing to adequately train its officers and to discipline them, upon information and belief, Defendant Hunter was not disciplined by Canadian County after he displayed said sexual conduct.

340.    Rather, Defendant Hunter was permitted to continue to serve as a Canadian County Sheriff's Deputy without any discipline or further training which directly resulted in the sexual assault against Plaintiff.

341.    Canadian County's failure to adequately train its officers, including Defendant Hunter, concerning the and to discipline them for their prior instances of sexual misconduct directly and proximately caused the violation of Plaintiff's Fourth, Eighth, and Fourteenth Amendment rights and, ultimately, her injuries.

342.    As a direct and proximate result of Defendant Canadian County's policies and unwritten customs as set forth above, Plaintiff experienced extreme pain and suffering, financial loss, and mental anguish, and emotional distress for which she seeks compensation.

**COUNT VI**
**18 U.S.C. § 1591(a) – Trafficking Victims Protection Reauthorization Act**
**(Against Defendants Loman and West)**

53

**Exhibit 2**

343.    All preceding paragraphs are incorporated as if fully re-written herein.

344.    The TVPRA outlaws sex trafficking activities that affect interstate or foreign commerce or take place within the territorial jurisdiction of the United States. It is to be construed broadly because it serves a remedial purpose and uses intentionally broad language.

345.    The TVPRA makes it unlawful for:

(a) Whoever knowingly—

(1) in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or

(2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),

knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).[8]

346.    As alleged herein, Defendants Hunter and West have knowingly used the channels and instrumentalities of interstate commerce to violate the TVPRA by both allowing and actively transporting inmates, including Plaintiff, in Canadian County vehicles, for the purpose of engaging commercial sex acts, or in reckless disregard of the

---

[8] 18 U.S.C. § 1591(a).

**Exhibit 2**

fact, that fraud, threats of serious harm, coercion, and physical force, or knowing that the victim was detained and in the custody of Canadian County and under the direct control of Canadian County officers would cause Plaintiff to forcibly engage in commercial sex acts.

347.      Defendant Canadian County and Canadian County Sheriff's Office received funds through federal grants to purchase equipment which was utilized in interstate commerce for the purpose of sex trafficking.

348.      Defendant Canadian County and Canadian County Sheriff's Office benefited through the use of the interstate for a convenient way to travel over and through the roads between the locals where its employees picked up and sexually assaulted inmates.

349.      Defendant Canadian County and Canadian County Sheriff's Office utilized and benefits from interstate commerce through the use of the GeoSafe GPS tracking which was supposed to track the Deputies but the Defendants failed to utilize to protect these women.

350.      Defendants Loman and West knowingly used the instrumentalities and channels of interstate commerce to facilitate violations of 18 U.S.C. § 1591(a)(1), occurring within the territorial jurisdiction of the United States and crossing boundaries of sovereign while transporting inmates.

351.      Defendants Hunter's and West's conduct was in or affecting interstate commerce for purposes of the TVPRA.

352.      Defendant Hunter, through the conduct mentioned herein, knowingly solicited and obtained the ability to transfer Plaintiff unaccompanied in a Canadian County police vehicle for the purpose of engaging her in a commercial sex act.

**Exhibit 2**

353.    Defendant West, through the conduct mentioned herein, knowingly allowed,

acquiesced to, and/or participated in Defendant Hunter intentionally seeking out the task

of transport female inmates for the purpose of engaging them in commercial sex acts.

354.    Defendant West, through the conduct mentioned herein, knowingly benefitted financially from allowing, acquiescing to, and/or participating in the transporting of female inmates for engaging in commercial sex acts, including Plaintiff, to wit: example of financial benefit.

    a. Decreased labor costs – West was able to avoid hiring additional deputies to cover needed shifts by allowing the Deputies who were sexually assaulting inmates to work extra shifts and save the costs of acquiring additional full time or part time help to transport inmates. The costs of increased payments to the respective deputies were less than hiring additional staff.

    b. West used his proximity to I-40, an instrumentality of interstate commerce, and Oklahoma's involvement in human trafficking to perpetuate schemes to make money through the Undercover Underage which filmed in the CCSO and CCSO activities.

    c. West saved money by not purchasing new vehicles or retrofitting vehicles with dash cameras to track employee activities.

    d. West saved money by not purchasing body cameras for the deputies to wear during transport.

    e. West saved money by utilizing faulty or inadequate tracking apps trusting that no one would complain about the abuse or be able to substantiate any abuse due to the lack of cameras and the Deputies selection of targets.

    f. West received money or benefits from the use of below market value prison labor through Clark and others who were incarcerated and performed tasks for the County.

    g. West received money or benefits from the interest earned on inmate savings account for the minimal wages paid for the housing of Clark and other inmates in the facility who were victims of the CCSO sexual assault and sex trafficking ring.

**Exhibit 2**

355.    Defendant Hunter, through the conduct mentioned herein, knowingly harbored and transported Plaintiff in a Canadian County police vehicle and deviated from his route to the Canadian County Jail.

356.    Defendant Hunter knowingly threatened, coerced, defrauded, and forced Plaintiff to engage in a commercial sex act.

357.    Plaintiff did engage in commercial sex acts with Defendant Hunter due to Defendant Hunter's threats, use of force, fraud, and coercion.

358.    Defendant Hunter provided or promised Plaintiff something of value in exchange for the sex acts performed.

359.    As a direct and proximate result of this conduct, Plaintiff experienced extreme pain and suffering, financial loss, and mental anguish, and emotional distress for which she seeks compensation.

**Exhibit 2**

## COUNT VII
### Civil Sexual Assault and Battery Arising Out of Intentional Criminal Conduct
### (Against Defendants Hunter and West)

360.    All preceding paragraphs are incorporated as if fully re-written herein.

361.    The conduct of Hunter violates numerous Oklahoma criminal statutes including 21 O.S. §888, 1029, 1111, and 1123 among other state and federal laws.

362.    The conduct forming the basis of these criminal acts is intentional and Hunter is under the supervision of the federal government relating to these criminal acts and his conduct has and is being investigated by the FBI.

363.    Plaintiff was threatened and placed in fear of her life and safety as a result of the conduct of Hunter.

364.    As a direct and proximate result of this conduct, Plaintiff experienced extreme pain and suffering, financial loss, and mental anguish, and emotional distress for which she seeks compensation.

## COUNT VIII
### NEGLIGENCE
### (Against Defendants CCSO and West)

365.    All preceding paragraphs are incorporated as if fully re-written herein.

366.    The Defendants CCSO and West have a duty to protect Plaintiff and all individuals in the care custody and control of the CCSO and house in the Canadian County Jail from harm and injury.

367.    The Defendants have a duty to hire, train, and supervise Deputies that comply with state and federal law and follow policy and procedure.

**Exhibit 2**

368.    The Defendants have a duty to ensure that the jail where inmates are housed are safe from retaliation, sexual assault and other threats.

369.    Hunter and Loman made threats of retaliation against their victims.

370.    All victims reported fear of reprisal while being housed in the jail.

371.    Clark experienced reprisal.

372.    The Defendants failed to comply with their duties and as a result Plaintiff was injured by Hunter and the other employees of the CCSO and the County.

373.    Plaintiff was threatened and placed in fear of her life and safety as a result of the conduct of Hunter.

374.    As a direct and proximate result of this conduct, Plaintiff experienced extreme pain and suffering, financial loss, and mental anguish, and emotional distress for which she seeks compensation.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment against Defendants, jointly and severally, for not less than $75,000.00, including but not limited to:

A.    Compensatory and consequential damages in an amount to be determined by the Court in excess of the Court's jurisdictional amount;

B.    Punitive damages against Defendants Hunter and West, in their individual capacities in an amount to be determined at trial, for their willful, reckless, and malicious conduct;

**Exhibit 2**

C.    Equitable relief, including, without limitation, that Defendant Canadian County be made to adopt appropriate policies to prevent future instances of the type of misconduct described herein;

D.    Attorneys' fees and the costs of this action and other costs that may be associated with this action; and

E.    Any and all other relief that this Court deems equitable, just, and proper.

## JURY DEMAND

Plaintiff respectfully demands a trial by jury of the within matter.

RESPECTFULLY SUBMITTED

RACHEL L. BUSSETT, OBA 19769
Bussett Legal Group PLLC
PO Box 851804
Yukon OK 73085
405-605-8073
rachel@bussettlegal.com
*Attorneys for Plaintiff*
*Attorneys lien claimed*

60

**Exhibit 2**

**Exhibit List**

1. Tort Claim of Kristina Crist
2. Hunter Probable Cause Affidavit
3. Superseding Indictment of Hunter.
4. Petition to Enter Plea of Guilty dated 06/05/04
5. Randall Notice of Discipline
6. Loman Probable Cause Affidavit and Information
7. Amended Information in CF-2022-52, Oklahoma v. Loman
8. Second Amended Information in CF-2022-52, Oklahoma v. Loman

**Exhibit 2**



# DICELLO LEVITT

TEN NORTH DEARBORN STREET    SIXTH FLOOR    CHICAGO, ILLINOIS 60602

**RACHEL L. BUSSETT**
RBUSSETT@DICELLOLEVITT.COM
440-953-8888

July 22, 2024

**Via Hand Delivery**                    **Via Hand Delivery**
**Canadian County Commissioners**        **Canadian County Clerk**
Tomas Manske                             Sherry Murray
Dave Anderson                            201 N Choctaw
Tracey Rider                             PO Box 458
201 N Choctaw                            El Reno, OK 73036
El Reno, OK 73036

**Via Hand Delivery**
**Canadian County Sheriff's Office**
R. Chris West      ~~JW   7.22-EA~~
208 W Rogers   Tracey Wolf
El Reno, OK 73036

**RE:**   **Notice of Tort Claim Against Canadian County, the Canadian County Sheriff's Office, R. Chris West, Sheriff of Canadian County and Wesley Wayne Hunter**

Client:             Kristina Clark
Entities:           Canadian County and the Canadian County Sheriff's Office
Date of Incident:   July 20, 2023 through present

**To Whom it May Concern:**

Please be advised that Kristina Crist has retained the law firm of DiCello Levitt, LLP to represent her in an action against the Board of County Commissioners of Canadian County ("Board" or "Commissioners"), the Canadian County Sheriff's Office ("CCSO"), R. Chris West ("Sheriff" or "West"), and Deputy Wesley Wayne Hunter ("Hunter") for damages she incurred while in the custody of the Canadian County Sheriff's Office. This claim arises within the Oklahoma Governmental Tort Claims Act, 51 O.S. § 151, the laws of the State of Oklahoma, the Oklahoma Constitution, the laws of the United States and

BIRMINGHAM · CHICAGO · CLEVELAND · NEW YORK · SAN DIEGO · SANTA FE · WASHINGTON DC · DICELLOLEVITT.COM

**Exhibit 2**

the United States Constitution. Please contact the undersigned attorney at the DiCello Levitt, LLP, to resolve this claim.

**TORT INFORMATION:**

Violations of state and federal law including the United States, Oklahoma, and Tribal Constitutions for violation of related to her sexual assault and the failure to protect her while in the custody and control of the State of Oklahoma and Canadian County including her rights to be free from unreasonable search and seizure, excessive force, her rights to be secure in her person and property, right to access the courts, due process, equal protection, privacy, medical care and treatment, retaliation for access to the courts, assault, battery, civil and criminal sexual assault, violations under the Fourth, Eighth and Fourteenth Amendments to the US Constitution, violations of Article 2 of the Oklahoma Constitution, specifically including but not limited to Sections 2, 7, 8, 9, 20, 30, and 34, violations of 42 USC §§1983, §1985, §14141, 18 U.S.C. §§242, §250(b)(1), §1151, §1153, §1519, §1595, §2241(a), and §2246(2)(A), violations of the Violent Crime Control and Law Enforcement Act ("VCCLEA"), Violence Against Women's Act ("VAWA"), the Prison Rape Elimination Act ("PREA"), the Trafficking Victims Protection Reauthorization Act ("TVPRA"), sex and human trafficking, and other violations of state and federal law that may be discovered based on the facts and circumstances of her incarceration with Canadian County.

**DESCRIPTION OF THE INCIDENT(S):**

On July 17, 2023, Kristina Crist was arrested at the Choctaw Casino in Durant, Oklahoma on a Canadian County warrant and incarcerated in the Bryan County Jail. On July 20, 2023, CCSO Deputy Wesley Wayne Hunter volunteered to transport Crist from Bryan County to Canadian County. During the transport, Crist, was raped by Canadian County Deputy Wesley Hunter, while Deputy Hunter was transporting her in his CCSO vehicle to the Canadian County Jail. Hunter engaged in grooming behaviors prior to the assault designed to disarm Crist including buying Crist food and drinks. Hunter told Crist that he could turn off his GPS for six minutes without anyone asking any questions, and then did so, by departing from the appropriate transportation route and driving to an unknown deserted location with three barns. Further, Hunter made statements to Crist which implied she was not the only inmate he has sexually assaulted while in the course and scope of his job with CCSO.

Hunter was able to turn off his GPS without arousing concern or suspicion because GPS is used through a phone app which is known to go offline in certain areas of the state due to lack of cellular service. All CCSO Deputies know about this limitation to the system and the lack of monitoring or periodic checking of their GPS logs. West has been advised that this and the lack of cameras, created a risk to the inmates and the Officers by other Deputies and chosen to disregard such warnings. During a subsequent criminal investigation, it was discovered that Hunter had in fact turned off his GPS just east of Highway 70 and Antioch Road. Approximately ten minutes after turning the GPS off,

ill

Hunter turned it back on a short distance west of Antioch Road. However, Canadian County did not review or investigate Hunter's GPS being out of range or being turned off prior to criminal investigators seeking this information in response to Crist's reporting of the rape. CCSO would not have investigated Hunter's status absent a report and had no policy of periodic monitoring and comparing route reported versus routes driven by Deputies during transport despite a history of sexual assaults by CCSO deputies before the assault of Crist.

Hunter did not use a condom when he assaulted Crist and ejaculated inside her; thereby exposing her to pregnancy, sexually transmitted disease, and other blood and fluid borne pathogens. Crist was afraid that Hunter would shoot her and leave her in the field to die claiming that she tried to escape. Hunter spread Crist's legs and locked them to disable her and raped her while she was handcuffed. At Hunter's instruction, Crist used the napkins from the food purchase to clean the semen and bodily fluids from her body and genitals. The napkins are believed to have been recovered from the scene of the crime and in the custody of the FBI and/or the US Attorney's Office. Hunter threatened Crist over telling anyone because he knew where her daughter was. Crist was afraid to disclose her assault while in the custody of the CCSO for fear of retaliation and that the evidence of her rape, including any bodily fluids that might be on her clothes would disappear due to misconduct by the CCSO. Crist underwent a SANE examination after her release and her clothes were taken into evidence.

On July 31, 2023, a DNA search warrant was obtained for Hunter, and he was arrested and transported to the Marshall County Jail. He was later transferred to federal custody due to his status as a registered member of the Caddo tribe and the criminal conduct occurring on federal land. Eyewitnesses confirmed the presence of the CCSO vehicle in the area described by Crist and consistent with the GPS, the two individuals being outside the vehicle and engaging in the conduct described by Crist, and the napkins described by Crist to clean herself were located at the scene, photographed, and collected by the OSBI as evidence. Additionally, the napkins and Crist's clothes were subjected to DNA testing.

Under no circumstances is sexual contact between a law enforcement officer and an inmate whether in pre-trial detainment or post-trial detainment or incarceration lawful. Inmates are not capable of giving lawful consent to engage in sexual activity with law enforcement and such contact is forbidden by law. Crist was transported without regard to her rights under state and federal law and transported between sovereigns as she moved between reservation land and state property while being transported. Additionally, it is believed that Canadian County has engaged in cross-deputization or other agreements with tribal authorities related to the arrest, detention, and housing of Native Americans and/or is a party to agreements with the Federal Government to house and/or transport federal prisoners.

Hunter is Native America and a member of the Caddo Nation holding a Certificate of Degree of Indian Blood Card. He sexually assaulted Crist within Marshall County and the historical boundaries of the Chickasaw Nation. The assault was investigated by the Oklahoma State Bureau of Investigation and the Federal Bureau of Investigation.

Hunter has been charged for his conduct by the Chickasaw Nation in case CF-2023-486 and the United States District Court for the Eastern District of Oklahoma in case 2023-CR-0195-35344. Hunter plead guilty in case 2023-CR-0195-35344 on June 5, 2024, to County Three of the Superseding Indictment in violation of 18 USC §1519, Destruction, Alteration, or Falsification of Records in a Federal Investigation by knowingly altering, concealing, covering up or falsification of a record or tangible object acting in relation to a or in contemplation of the investigation of a matter intended to impede, obstruct or influence the investigation of that matter. The falsification of GPS data and obstruction of the investigation related to his rape of Kristina Crist as set forth in his plea agreement. Hunter was also charged with Aggravated Sexual Abuse in Indian Country in violation of 18 USC §§ 2241(a), §2246(2)(A), §1151 and §1153 by penetration using force, and threatening and placing the victim in fear of death and serious bodily injury; and Deprivation of Rights Under Color of Law for penetration without consent resulting in bodily injury and including kidnapping, aggravated sexual abuse and attempted aggravated sexual abuse in violation 18 USC §§ 242 and § 250(b)(1).

A Plea Agreement was entered on June 5, 2024 in case 2023-CR-0195-35344 where Hunter admits that he was employed as a Deputy with the CCSO and performed the function of picking up individuals who were arrested on Canadian County warrants and transporting the individuals back to Canadian County. Hunter admitted that while performing his duties and transporting for the CCSO he "knowingly altered, concealed, covered up or falsified a CCSO record or tangible object by deactivating GeoSafe, a first responder Global Positioning System (GPS) mobile tracking system, on my CCSO work phone, before I pulled the CCSO patrol car I was driving off the transport route to Canadian County. I took this action to conceal my criminal misconduct that followed and impede any future investigation into that criminal misconduct." The US Attorney and Hunter agreed that the range of punishment of 41-70 months is an appropriate disposition of the case. The Plea Agreement is filed of record in the case, however there is also a sealed plea agreement supplement. On information and belief, Hunter is still subject to prosecution by tribal authorities for the sexual assault of Crist.

From the moment that she entered the custody of the CCSO, Crist was molested, degraded, threatened, and sexually assaulted by Deputy Hunter. She was placed in fear for her safety while in custody with the Canadian County Jail, humiliated, scared, and suffers from PTSD as a result of her assault. Hunter threated Crist to force compliance and provided food, goods, services, and things of value to Crist to compensate her for his sexual behavior and to force her into compliance and not to disclose his assault and

illegal conduct. Hunter was working for and on duty with Canadian County when he assaulted Ms. Crist and was paid for his work and the time he spent assaulting Crist. Transportation of inmates was within his duties as a Deputy of CCSO. Further, Hunter made statements which indicated that his assault of Crist was not the first time he had sexually assaulted an inmate while working for the CCSO.

Prior to Ms. Crist's assault at least two other female inmates had been sexually assaulted by CCSO Deputy David Loman. Jennifer Clark was assaulted in August 2021 and Kaci Fox was assaulted in April 2022. Additionally, CCSO Deputy Raven Benson has been charged with a rape of an inmate and taking contraband into the jail in response to events allegedly occurring on or about December 1, 2021. After these assaults were discovered and prior to Ms. Crist's assault, the CCSO and Canadian County failed to take corrective action to protect inmates, particularly female and juvenile inmates and placed Crist at risk of harm. The conduct of Hunter and Loman is significantly comparable to support that a pattern of conduct exists within Canadian County of forcing inmates to engage in sexual behaviors to gratify the officers. Regardless of the crime alleged to have been committed by any individual in the custody and control of the CCSO, sexual assault and rape is not and never has been a recognized or approved form of punishment in any court of Oklahoma or the United States. Yet multiple CCSO Deputies have engaged in such conduct as judge, jury and executioner by raping and sexually assaulting individuals within the care and custody of the CCSO and the County and telling them that no one would believe them.

The Board, Sheriff, and CCSO all have statutory and constitutional duties regarding the creation, maintenance, and operation of the CCSO and the County Jail. All three have failed to have proper policies and procedures in place which led to these assaults and others. Not only have the Board, Sheriff, and CCSO failed to make and enforce proper policies and procedures regarding the transportation of inmates, they have failed to investigate allegations of sexual abuse and remedial action.

Not only has the Board, Sheriff, and CCSO failed to take corrective action after the assaults by Loman and Benson were discovered, which may have prevented the assault of Crist, there is a pattern and practice of hiring individuals who have been discharged from other law enforcement agencies after having been accused of sexual improprieties, of failing to take allegations made by other employees of the CCSO seriously as it relates to sexual and legal improprieties at work, in investigations, in enforcement and development of policies and procedures, and in discriminatory enforcement of the policies that do exist.

One Deputy was hired by CCSO was previously been forced to resign from his position as a Police Officer due to sexual harassment. This information should have been uncovered in a pre-hiring background check. While employed with the CCSO and during

ill

the relevant time periods described herein, said Deputy engaged in a pattern and practice of sexually harassing inmates in the custody of CCSO and patrons at the Canadian County Courthouse and in the course and scope of his duties, but no action was taken against him for years. When inappropriate behavior by that Deputy toward an "females in and out of the custody of the county or state" was finally confirmed, the Deputy was not dismissed, instead he was transferred to the Canadian County Children's Justice Center ("CCCJC") to be in a position of power and authority over juveniles in custody. Juveniles are even more at risk than adults. This put the Deputy in the position of transporting at risk juveniles and demonstrates further lack of planning, foresight, and policies by the CCSO, the Sheriff, and the Board on proper discipline and enforcement of the law and duty to protect individuals in custody. The Board has authority over the management and facility of the CCCJC. Further, there are no policies in place to protect the transportation of juveniles and placing an individual who the CCSO had confirmed acted sexually inappropriate created a risk to children. This Deputy was fired after another confirmed incident of inappropriate sexual behavior on March 28, 2024. Both of these incidents occurred AFTER the reported assaults by Loman, Hunter and Benson. Further, this is not the only deputy hired after a member of the public has made complaints of inappropriate sexual behavior or the investigation of sexual abuse in the course of engaging in law enforcement duties.

Additionally, even after the assault of Clark, Fox, and Crist were reported, Clark has continued to be transported in such a way that violates law enforcement standards and places her at risk. While Ms. Clark has been intermittently in the custody of Canadian County the CCSO has retaliated against her for her assertions against Loman by failing to call for an investigation into her sexual assault and taking punitive actions against her. The Canadian County Commissioners, who have the duty to maintain the jail has failed to investigate the assault and to ensure that there are proper policies and procedures in place for the transportation of inmates. Further, the Commissioners have failed to call for an investigation into the jail and implement policies in response to the multiple allegations of sexual assault and sexual impropriety at the Canadian County Jail.

Deputy Loman is being prosecuted as a result of his sexual assault of Kaci Fox. There is also a charge for engaging in a pattern of offenses by the Jefferson County District Attorney due to Loman's sexual assault of Jennifer Clark. Former CCSO Raven Benson is being prosecuted for her rape of an inmate in Canadian County which is alleged to have occurred on or about December 1, 2021.

No prosecution has been undertaken for the conduct of Deputy who was moved to the Juvenile Center and subsequently discharged after confirmed instances of sexual impropriety. Canadian County has not investigated the sexual assault of Clark or called for the OSBI to investigate the assault of Clark despite the established pattern of conduct at the CCSO of abuse of inmates, the Jefferson County charge against Loman, and has

not investigated the subsequent retaliation by CCSO Deputies against Clark who has been in the custody of the CCSO since November 2023. Despite at least six confirmed sexual assaults by CCSO Deputies, the Board and the CCSO have failed to correct the deficits that led to these assaults and/or implement proper policies and procedures to protect inmates in the transportation of inmates and the maintenance of the jail.

There is a policy and practice of a complete lack of monitoring and supervision of transport deputies/vehicles, patrol officers and jailers, which has resulted in a pattern of sexual assaults which endangers the community. Canadian County's lack of policies and practices have resulted in at least six allegations of sexual assault while an individual was in the care and custody of the County since 2021.

There is also no standard procedure for reporting departure time, route, or mileage when transporting inmates, particularly female or juvenile inmates, who are at high risk of sexual assault by law enforcement. The Sheriff, the CCSO, and/or the Board either knew or should have known that these deficits in technology and policy exist and that the Deputies were tampering with the system, particularly in light of the assaults of Clark and Fox which preceded the assault of Crist and prior warnings of failures and deficits in the transportation system by employees of the County and the CCSO.

The CCSO and the Sheriff have failed to monitor or supervise the GPS or location of the transport vehicles, allowing transport deputies to drive to secluded locations where they could sexually assault their prisoners. The CCSO and the Sheriff have failed to monitor or supervise what was occurring inside of the vehicles by not maintaining audio or video recording devices inside of the vehicles, allowing transport deputies to sexually assault female prisoners without concern it would be documented. The CCSO and the Sheriff have failed to monitor or supervise these transports by permitting male deputies to transport female inmates alone, in the front seat of the vehicles, and even allowing the male deputies to pick transports involving female inmates.

The Board ratified these policies and practices of the CCSO and Sheriff by failing to investigate and update policies and procedures for the jail that it is charged with duties for and as the head administrative body of the county after the allegations against Loman, Benson, Hunter, and others and by allowing the ongoing employment of officers within the County working at County Buildings to protect the public who have been accused of inappropriate sexual behavior. The Board lacks any meaningful policies and procedures to protect inmates, particularly female and juvenile inmates, during transportation and/or housing in the Canadian County Jail from sexual assault or misconduct by County and Jail employees.

**LOCATION (ADDRESS), DATE AND TIME OF THE INCIDENT:**
Various dates from 7/20/2023 through present.

**CLAIMANT'S NAMES, ADDRESS, PHONE NUMBERS:**
Kristina Crist

**ESTIMATE OF THE DAMAGES:**
In excess of $175,000.00

**PARTIES/AGENCIES INVOLVED:**
Canadian County, Canadian County Sheriff's Department, R. Chris West, Wesley Wayne Hunter, Deputies and Staff at the Canadian County Jail and Sheriff's Dept.

**NAME, ADDRESS, TELEPHONE NUMBER OF AUTHORIZED AGENT TO SETTLE CLAIM:**
Rachel Bussett
DiCello Levitt, LLP
8160 Norton Parkway, Third Floor
Mentor, OH 44060
440-953-8888

If you have any questions or need any additional information, please do not hesitate to contact me. I can be reached at the number listed above or via email at RBussett@DicelloLevitt.com. Please always include my paralegal, Nicole at NCantrell@DicelloLevitt.com on all correspondence.

Sincerely,

Rachel Bussett

**Exhibit 2**

EDOK Criminal Complaint (Revised 6/15)

# United States District Court
## EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | **CRIMINAL COMPLAINT** |
| *Plaintiff,* | |
| v. | **Case No.** 23-MJ-262-GLJ |
| WESLEY WAYNE HUNTER, | |
| *Defendant.* | |

I, <u>SA Conal Murphy</u>, the undersigned complainant, state that the following is true to the best of my knowledge and belief.

On or about July 20, 2023, within the Eastern District of Oklahoma, in Indian Country, the Defendant, **WESLEY WAYNE HUNTER**, knowingly caused another person to engage in a sexual act by using force against that person thereby committing Aggravated Sexual Abuse in Indian Country in Violation of Title 18, United States Code, Section(s) 2241(a)(1), 1151, and 1153.

I further state that I am a Special Agent with the Federal Burau of Investigation, and that this complaint is based on the following facts:

(See attached Affidavit of SA Conal Murphy, which is attached hereto and made a part hereof by reference.)

☒    Continued on the attached sheet.

Conal Murphy
Special Agent
Federal Bureau of Investigation

Sworn to on **31 OCT** , 2023.

GERALD L. JACKSON
UNITED STATES MAGISTRATE JUDGE
Name and Title of Judicial Officer

Signature of Judicial Officer

## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF OKLAHOMA

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Special Agent Conal Murphy, being duly sworn, depose and state that:

## INTRODUCTION

1.    I am a Special Agent (SA) of the Federal Bureau of Investigation (FBI), and have been so employed since June of 2021. I am currently assigned to the Oklahoma City Division Field Office, Ardmore Resident Agency. Prior to being employed as a Special Agent with the FBI, I was a Special Agent with Homeland Security Investigations (HSI) for over fifteen years. As an HSI SA I conducted investigations of violations of federal criminal law, focusing on Title 21, Title 18, Title 19 and Title 8. I made arrests, conducted searches, and composed affidavits for search warrants and complaints. During my time as an FBI Special Agent, I have conducted and assisted in many investigations to include violent crime violations.

2.    As an FBI SA, I am authorized to investigate violations of the laws of the United States, and to execute warrants issued under the authority of the United States.

3.    The statements contained in this Affidavit are based in part on: information provided by other agencies, written reports about this and other investigations that I have received, directly or indirectly, from other law enforcement agents; my independent federal investigation; and my experience, training, and background as an SA with the FBI. Because this Affidavit is being submitted for the limited purpose of establishing probable cause to believe that WESLEY WAYNE HUNTER, committed the below-described offense, I have not included every detail of the investigation. In addition, unless otherwise indicated, all statements contained in this Affidavit are summaries in substance and in part. The following is true to the best of my knowledge and belief.

1

**Exhibit 2**

## PROBABLE CAUSE

4.      As will be shown below, there is probable cause to believe that WESLEY WAYNE HUNTER committed Aggravated Sexual Abuse in violation of Title 18, United States Code, Section(s) 2241(a)(1), 1151, and 1153, which occurred within the boundaries of the Chickasaw Nation.

5.      VENUE: the facts and circumstances alleged in this affidavit occurred within the Eastern District of Oklahoma.  More specifically, based on the Supreme Court decision in *McGirt v. Oklahoma (2020)*, the below described location is within the   historical boundaries of the Chickasaw Nation, and therefore is within Indian Country.

6.      DEFENDANT: the defendant is WESLEY WAYNE HUNTER, hereinafter referred to as HUNTER.  The subject described herein is an enrolled member of the Caddo Nation, a federally recognized Indian Tribe, and has some degree of Indian blood.

7.      VICTIM: the victim is K.C., hereinafter referred to as Victim 1.

8.      I received information regarding a crime which occurred in Marshall County, Oklahoma, within the historical boundaries of the Chickasaw Nation. I am the SA assigned to investigate this matter. This affidavit is intended to show there is sufficient probable cause for a Complaint and does not set forth all of my knowledge about this matter.  This affidavit is made in support of a Complaint and Arrest Warrant for the crime in violation of Title 18, United States Code, Section(s) 2241(a)(1), 1151, and 1153.  In support of this request, I submit the following:

9.      On July 25, 2023, Canadian County Sheriff's Office (CCSO) Undersheriff K.W. contacted the Oklahoma State Bureau of Investigation (OSBI) to request a full investigation into an alleged rape.  On July 20, 2023, CCSO Deputy WESLEY WAYNE HUNTER transported a prisoner from the Bryan County Jail located in Durant, Oklahoma, to CCSO, located in El Reno, Oklahoma. That prisoner was Victim 1. Victim 1 had been arrested a few days prior, on July 17,

2

2023, at the Choctaw Casino in Durant, Oklahoma, for a Canadian County warrant. Following her transport to the CCSO and release from the detention center, Victim 1 reported to CCSO that during her transport on July 20, HUNTER had pulled off Highway 70 onto Antioch Road in Marshall County into a deserted area and forcibly raped her. Victim 1 described the location of the rape as having three barns to the side of the road.

10.    OSBI Special Agent M.M. responded and interviewed Victim 1. Victim 1 told M.M. that HUNTER said he could turn off his GPS for six minutes without anyone asking any questions, and then did so, pulling off the road and driving to an unknown location with three barns. During the rape, HUNTER did not wear a condom and ejaculated inside of Victim 1. Victim 1 said she did not say no to HUNTER because he was a police officer and she was scared. In a later interview with the FBI, Victim 1 explained that her fear was that HUNTER would shoot her and leave her in a field, telling others she tried to escape. Because of this fear, she did not react or speak against the sexual assault. Victim 1 further advised that during the sexual assault, HUNTER spread her legs with his and locked them in a way that disabled her from moving her body to resist. Victim 1 remained handcuffed during the sexual assault and had a mark on her chest from where the handcuffs rubbed her during the sexual assault. After the sexual assault ended, HUNTER directed Victim 1 to squat and clean his semen out of her genital area with McDonald's napkins. Victim1 did as she was told. Victim 1 left those napkins at the scene where HUNTER pulled off the road. Once back in the car, HUNTER told Victim 1 not to tell anyone because he knew where her daughter was.

11.    Victim 1 explained in an interview with the FBI that she needed to wait to disclose until she was out of jail because she believed HUNTER left evidence of his semen in her pants which were in the custody of the jail and she was afraid the "boys" system would lead to the disappearance of evidence if she disclosed. HUNTER described Victim 1 as "one of the good

3

ones" when he dropped her off with a guard at the jail which caused her to be scared because she wasn't sure what that would mean for her if she disclosed. After Victim 1's disclosure, she was taken to Integris Medical Center Southwest for a SANE examination. The clothing worn during the sexual assault was collected for DNA testing.

12.    On July 31, 2023, M.M. executed a DNA search warrant for HUNTER and arrested him at that time. M.M. transported HUNTER to the Marshall County Jail where he was booked in for one charge of Second Degree Rape. After learning that HUNTER was a member of the Caddo Nation Tribe, M.M. contacted the FBI.

13.    On July 27, 2023, when the location of the incident was confirmed to have happened in Marshall County, Marshall County Undersheriff L.B. requested the OSBI continue the investigation. M.M. obtained the GeoSafe GPS data for the CCSO vehicle driven by HUNTER when he transported Victim 1. Analyzing the data, it appeared to M.M. that HUNTER had turned off his GeoSafe GPS just east of Highway 70 and Antioch Road. Approximately ten minutes after turning GeoSafe off, HUNTER turned it back on a short distance west of Antioch Road.

14.    On July 28, 2023 M.M. located and interviewed an eyewitness, L.H., in the area of the crime. L.H. was mowing a field owned by F.H. on July 20, 2023, in the afternoon, possibly around 1330 hours. L.H. was on a large John Deere tractor with a cab. L.H. told OSBI SA M.M. that on July 20, 2023, from L.H.'s view on the tractor, L.H. saw the three barns that Victim 1 had described and saw a police car. L.H. saw the police car turn into F.H.'s driveway which goes past the three barns. The vehicle was a light-colored, possibly silver, car and had a heavy black grill guard that would normally be seen on a truck. The vehicle had orange/red lettering on the side. L.H. thought the lettering on the side said "Sheriff." The vehicle backed into the second barn/shop next to the road. The officer got out of the driver's seat and walked around to the passenger side and opened the rear passenger side door. L.H. estimated the officer was out of the car for 10-15 minutes, then

**Exhibit 2**

left. L.H. described the driver of the car as being tall with short hair.

15.    On July 28, 2023, OSBI SA M.M. went to Antioch Road just north of Highway 70 in Marshall County, Oklahoma, to search for any evidence. OSBI SA J.B. identified this area as the potential crime scene on July 26th. M.M. went north on Antioch Road from Highway 70 and was able to locate three gray barns on the east side of Antioch Road as was described by Victim 1. M.M. and J.B. searched the area around the middle of the three barns and located a wad of brown paper napkins next to the gravel road as described by Victim 1. The napkins were photographed and collected as OSBI evidence. DNA results from clothing Victim 1 was wearing during the sexual assault remain pending with a request that they be rushed.

16.    Based on a review of this case and based on my knowledge and experience with violent crimes, I, as your Affiant have probable cause to believe WESLEY WAYNE HUNTER committed the offense of Aggravated Sexual Abuse  In violation of Title 18, United States Code, Section(s) 2241(a)(1), 1151, and 1153.

Respectfully Submitted,

Conal Murphy, Special Agent
Federal Bureau of Investigation

Sworn before me this 31ST day of October, 2023.

UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF OKLAHOMA

5

ORIGINAL

**FILED**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

APR 1 0 2024

BONNIE HACKLER
Clerk, U.S. District Court

By_____
Deputy Clerk

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| *Plaintiff,* | |
| **v.** | **Case No. CR-23-195-RAW** |
| **WESLEY WAYNE HUNTER, JR.,** | |
| *Defendant.* | |

## SUPERSEDING INDICTMENT

The Federal Grand Jury charges:

### INTRODUCTION

At times material to this Superseding Indictment:

1. The defendant, **WESLEY WAYNE HUNTER, JR.,** worked as a sheriff's deputy for the Canadian County Sheriff's Office ("CCSO"), a law enforcement agency in Canadian County, Oklahoma.

2. As part of his duties, **WESLEY WAYNE HUNTER, JR.,** transported individuals who were arrested pursuant to Canadian County, Oklahoma warrants from the arresting jurisdiction back to Canadian County, Oklahoma.

3. Victim was a female in custody, arrested on a Canadian County, Oklahoma warrant, whom **WESLEY WAYNE HUNTER, JR.,** during the course of his duties, transported from Bryan County, Oklahoma, to Canadian County, Oklahoma.

4. Paragraphs One through Three are incorporated by reference in the counts below.

## COUNT ONE

### AGGRAVATED SEXUAL ABUSE IN INDIAN COUNTRY
### [18 U.S.C. §§ 2241(a), 2246(2)(A), 1151, & 1153]

On or about July 20, 2023, within the Eastern District of Oklahoma, in Indian country, the defendant, **WESLEY WAYNE HUNTER, JR.**, an Indian, did knowingly cause and attempt to cause Victim to engage in a sexual act defined in Title 18, United States Code, Section 2246, to wit: penetration, however slight, between the penis of the defendant and the vulva of Victim, by using force against Victim, and by threatening and placing Victim in fear of death and serious bodily injury, in violation of Title 18, United States Code, Sections 2241(a), 2246(2)(A), 1151, and 1153.

## COUNT TWO

### DEPRIVATION OF RIGHTS UNDER COLOR OF LAW
### [18 U.S.C. §§ 242 & 250(b)(1)]

On or about July 20, 2023, within the Eastern District of Oklahoma, the defendant, **WESLEY WAYNE HUNTER, JR.**, while acting under color of law, willfully deprived Victim of her right to bodily integrity, a right secured and protected by the Constitution and laws of the United States, when he penetrated Victim's vulva with his penis without her consent. The defendant's conduct resulted in bodily injury to Victim and included kidnapping, aggravated sexual abuse, and attempted aggravated sexual abuse, in violation of Title 18, United States Code, Sections 242 & 250(b)(1).

## COUNT THREE

### FALSIFICATION OF RECORDS
### [18 U.S.C. § 1519]

On or about July 20, 2023, within the Eastern District of Oklahoma, the defendant, **WESLEY WAYNE HUNTER, JR.**, acting in relation to and in contemplation of a matter within the jurisdiction of the Federal Bureau of Investigation, an agency of the United States, knowingly altered, concealed, covered up, and falsified a record and tangible object with the intent to impede, obstruct, and influence the investigation and proper administration of that matter. Specifically, the defendant knowingly

altered, concealed, covered up, and falsified a "CCSO" record by deactivating GeoSafe, a first

responder Global Positioning System ("GPS") mobile tracking and Computer-Aided Dispatch

("CAD") integration system, on his "CCSO" cellular work phone during his transport of Victim, in

violation of Title 18, United States Code, Section 1519.

A TRUE BILL:

CHRISTOPHER J. WILSON
United States Attorney

NICOLE PALADINO AR Bar # 2017113
Assistant United States Attorney

Pursuant to the E-Government Act,
the original indictment has been filed
under seal in the Clerk's Office.

s / Foreperson
FOREPERSON OF THE GRAND JURY

# FILED

JUN 05 2024

BONNIE HACKLER
Clerk, U.S. District Court

By_____
Deputy Clerk

# UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF OKLAHOMA

United States of America,

                                        Plaintiff,

vs.                                                     Case Number:         CR-23-195-JDR

Wesley Wayne Hunter, Jr.

                                        Defendant.

## PETITION TO ENTER PLEA OF GUILTY
## AND ORDER ENTERING PLEA
### (Federal Rules of Criminal Procedure, Rules 10 and 11)

**The defendant represents to the Court:**

My full true name is: Wesley Wayne Hunter, Jr.  I am __28__ years of age.  I have gone to school up to and including graduating from high school and taking some college classes. I request that all proceedings against me be in my true name.

I am represented by an attorney; his/her name is: Douglas G. Smith II.

I received a copy of the Superseding Indictment/Information [**Circle the appropriate title.**] before being called upon to plead. I read the Superseding Indictment/Information [**Circle the appropriate title.**] and have discussed it with my attorney. I fully understand every charge made against me.

I told my attorney all the facts and circumstances known to me about the charges made against me in the Superseding Indictment/Information [**Circle the appropriate title.**].   I believe that my attorney is fully informed on all such matters.

My attorney has counseled and advised me on the nature of each charge, on all lesser included charges, and on all possible defenses that I might have in this case.

### WAIVER OF CONSTITUTIONAL RIGHTS

I know that I have the right to plead "NOT GUILTY" to any offense charged against me.  If I plead "NOT GUILTY," I know the Constitution guarantees me:

    (a)    the right to a speedy and public trial by a jury;

    (b)    at that trial, and at all stages of the proceedings, the right to the assistance of an attorney;

    (c)    the right to see and hear all witnesses called to testify against me, and the right to cross-examine those witnesses;

    (d)    the right to use the power and process of the Court to compel the production of any evidence, including the attendance of any witnesses in my favor; and

    (e)    the right not to be compelled to incriminate myself by taking the witness stand; and, if I do not take the witness stand, no inference of guilt may be drawn from such failure.

In regard to my right to a jury trial, I know that I am the only person that can waive, that is, give up, that right. I also fully understand that if I have trial by a jury, I have the right of the assistance of an attorney; also the right to confront and cross-examine witnesses against me; and the right not to be compelled to incriminate myself. Furthermore, I understand that to convict me, all twelve (12) jury members would have to agree that I am "GUILTY."

I know that, if I plead "GUILTY," I am thereby waiving my right to a trial, and that there will be no further trial of any kind, either before a Court or jury, and further, I realize that the Court may impose the same punishment as if I had pleaded "NOT GUILTY," stood trial, and been convicted by a jury.

I further understand that my waiver of Sixth Amendment rights to a jury is a waiver of trial by jury in all respects, both as to guilt or innocence and as to sentencing, and I consent that all matters in these proceedings be determined by the Court in accordance with Rule 23 of the Federal Rules of Criminal Procedure.

## PLEA OF GUILTY

I know that, if I plead "GUILTY," the Court will ask me questions about the offense(s) to which I have pleaded, and since I will be answering these questions under oath, on the record, and in the presence of my attorney, that my answers may later be used against me in a prosecution for perjury or false statement.

I know that the Court must be satisfied that there is a factual basis for a plea of "GUILTY" before my plea can be accepted. I represent to the Court that I did the following act(s) in connection with the charge(s) made against me in Count(s): **[NOTE: Defendant must set out in detail what (s)he did. If more space is needed, add a separate page.]**

I, Wesley Wayne Hunter, Jr., admit that I was employed as a sheriff's deputy by the Canadian County Sheriff's Office ("CCSO"). As a sheriff's deputy, I performed the government function of picking up individuals who were arrested on Canadian County, Oklahoma, warrants and transporting those individuals back to Canadian County, Oklahoma. As part of my duties, I was required to comply with the Constitution and laws of the United States.
On July 20, 2023, I picked up Victim, a female pretrial detainee, from the Bryan County Jail in Bryan County, Oklahoma, to transport her to the CCSO in Canadian County, Oklahoma. While acting in relation to and in contemplation of a matter within the jurisdiction of the Federal Bureau of Investigation, an agency of the United States, I, Wesley Wayne Hunter, Jr., knowingly altered, concealed, covered up, or falsified a CCSO record or tangible object by deactivating GeoSafe, a first responder Global Positioning System (GPS) mobile tracking system, on my CCSO work phone, before I pulled the CCSO patrol car I was driving off the transport route to Canadian County. I took this action to conceal my criminal misconduct that followed and impede any future investigation into that criminal misconduct.
This illegal misconduct and the Destruction, Alteration, or Falsification of Records in a Federal Investigation occurred in the Eastern District of Oklahoma. I am a registered member of the Caddo Nation, which is a federally recognized Indian tribe. I have some degree of Indian blood.

In deciding to enter my plea of guilty, I rely upon the following advice from my attorney. **[NOTE: List any and all advice or recommendations by your attorney upon which you rely in entering your plea of guilty.]**

My attorney advised me that the plea agreement is pursuant to Rule 11(c)(1)(C). If the Judge does not accept the agreement, then I can withdraw my guilty plea. The most important parts of the agreement are that Counts 1 &2 will be dismissed and the sentencing range is 41-70 months.

I also inform the Court that I am not relying, in entering my plea(s) of Guilty, on any representation from my attorney or from the Government or any other source that has not been revealed to the Court and made a part of this record.

By pleading guilty, I understand that I waive, that is, give up, all pretrial motions, and cannot assert any such motions before the Court or on appeal after pleading guilty.

I also understand that a conditional plea pursuant to Rules of Criminal Procedure, Rule 11(a)(2) can only be entered WITH THE APPROVAL OF THE COURT, and the GOVERNMENT reserving IN WRITING the right, on appeal from the judgment, to review of any adverse determination of any pretrial motions. The writing must be presented in open court and made part of the record.

I know that the Court will not permit anyone to plead "GUILTY" who maintains (s)he is innocent and, with that in mind, and because I am "GUILTY" and do not believe I am innocent, I wish to plead "GUILTY," respectfully request the Court to accept my plea of "GUILTY," and to have the Clerk enter my plea of "GUILTY," as follows:
**[NOTE:   The defendant's plea of "GUILTY" or "NOT GUILTY" to each offense should be entered in the blank space provided below.  If the Indictment/Information charges a single offense, a defendant who wishes to plead "GUILTY" should write in the below space "GUILTY as charged in the Indictment/Information." If more than one offense is charged, defendant should write in the space below "GUILTY as charged in Count(s) _____," "NOT GUILTY as charged in Count(s) _____."]**

GUILTY as charged in Count 3. NOT GUILTY as charged in Counts 1 & 2.

## MINIMUM SENTENCE AND MANDATORY MINIMUM SENTENCE

I have been informed and understand that a plea of guilty may subject me to a minimum sentence of prison and/or fine.  In addition, my attorney has informed me that Count 3 will subject me to a statutory mandatory minimum sentence of N/A years.

## MAXIMUM SENTENCE REQUIRED UNDER LAW

My attorney informed me that the plea of "GUILTY" could subject me to a maximum punishment, which, as provided by law, is 20 years imprisonment and/or a fine of $250,000.  My attorney has further advised me that if the offense(s) to which I plead "GUILTY" occurred on or after January 1, 1985, the maximum fine is the largest of:

(a)   The amount specified in law defining the offense
(b)   Double the gross pecuniary gain derived by a defendant from the offense
(c)   Double the pecuniary loss caused by the offense to another person
(d)

|  | Individual Defendant | Other Defendant |
|---|---|---|
| Any Felony; Misdemeanor resulting in death | $250,000 | $500,000 |
| Other Misdemeanor punishable by more than six months | $100,000 | $200,000 |

My attorney has also advised me that a Special Monetary Assessment in the amount of $100 will be assessed per count if the offense(s) occurred on or after November 12, 1984.

Further, my attorney has advised me that if the offense(s) to which I plead "GUILTY" occurred after December 31, 1982, and the offense(s) charge violation(s) of any statute found under Title 18 of the United States Code or certain subsections of the Federal Aviation Act (Title 49 U.S.C. 1472), that Title 18 U.S.C. et seq. authorizes a court to sentence a defendant to pay restitution in addition to, or in lieu of, any other penalty permitted by law, to any victim(s) of the offense(s).

In addition, I understand that if I am sentenced to prison, a term of supervised release of 3 years may/must be imposed. If the term of supervised release is revoked, an additional term of imprisonment and supervised release may be imposed at each revocation.

## IMMIGRATION CONSEQUENCES OF PLEA

If I am not a citizen of the United States, I understand that my plea of guilty in this case may subject me to deportation and/or removal from the United States.  **[NOTE: If applicable, insert "My attorney has specifically advised me of the following immigration consequences of my plea of guilty: If I am imprisoned, I will be deported upon completion of my sentence of imprisonment. If I am not imprisoned, I will be deported immediately."]**

My plea of "GUILTY" (is)(is not) [Circle the appropriate response] the result of a plea agreement entered into between the government attorney, my attorney, and me.

Since my plea of "GUILTY" is the result of a plea agreement, I hereby state that the terms of said agreement are as follows:

See Plea Agreement.

I fully understand that the Court is not bound by the terms of the plea agreement, and may accept or reject said agreement. If the Court rejects the agreement, I also understand that the Court will give me the opportunity to withdraw my plea of "GUILTY."

I believe that my attorney has done all that anyone could do to counsel and assist me, AND I AM SATISFIED WITH THE ADVICE AND HELP (S)HE HAS GIVEN ME.

### STATE OF MIND

My mind is clear. I am not under the influence of alcohol or drugs, and I am not under a doctor's care. The only drugs, medicine or pills that I took within the past seven (7) days are: [NOTE: If none, so state.]

Tylenol

I have never been confined in any institution for the treatment of mental illness. I have never been adjudicated mentally incompetent. No psychiatrist, physician or psychologist has ever found me to be mentally ill. I know of no reason why my mental competence at the time of the commission of the alleged offense(s), or at the present time, should be questioned. [NOTE: If there are any exceptions to the above statement, explain here.]

At age 16, my grandfather committed suicide. In response, I ran away from home and was then placed in a facility for

depression/suicide observation.

I offer my plea of "GUILTY" freely and voluntarily, and further state that my plea of "GUILTY" is not the result of any force or threats against me, or of any promises made to me other than those noted in this petition. I further offer my plea of "GUILTY" with full understanding of all the matters set forth in the Superseding Indictment/Information [Circle the appropriate title.] and in this petition, and in the certificate of my attorney which is attached to this petition.

### SENTENCING

I have been advised by counsel that I will be sentenced pursuant to the advisory sentencing guidelines procedure established by Title 18 U.S.C. §3553 et seq. I understand that sentencing is a matter left exclusively in the province of the Court; and I understand that the sentence imposed by the Court may be within the guideline table range provided by law or, for good cause stated, the Court may depart therefrom after all relevant facts and circumstances of my case have been considered by the Court, or the Court may impose a non-guideline sentence.

I further understand that the Court may impose a term of Supervised Release that will run after any term of confinement that might be imposed.

Further, I understand that probation is not available as a sentencing alternative to the Court in most cases under the advisory sentencing guidelines and that, whenever probation is permissible under the advisory sentencing guidelines, it is exclusively within the Court's province to grant or deny probation.

If I am currently on supervised release, probation or parole in this or any other Court, I know that by pleading "GUILTY" here, my probation, supervised release or parole may be revoked, and I may be required to serve time in that case which may be consecutive, that is, in addition to any sentence imposed on me in this case.

I declare that no officer or agent of any branch of government (Federal, State, or local) has promised, suggested or predicted that I will receive a lighter sentence, or probation, or any other form of lenience, if I plead "GUILTY" except as follows:
**[NOTE:  Insert any promises or concessions made to the defendant or to his/her attorney.  If the plea of "GUILTY" is the result of a plea agreement, refer to paragraph _____ of this petition.]**

See Plea Agreement

If anyone else, including my attorney, made such a promise, suggestion, or prediction, except as noted in the previous sentence, I know that (s)he had no authority to do so.

I know that the sentence I will receive is solely a matter within the control of the Judge.  I hope to receive lenience, but I am prepared to accept any punishment permitted by law which the Court sees fit to impose.  However, I respectfully request the Court to consider, in mitigation of punishment, that I have voluntarily entered a plea of "GUILTY."

I have been advised and do understand that, subject to any waiver of my appellate and post-conviction rights contained in my written plea agreement, I have the right of appeal of any sentence imposed by the Court to the Tenth Circuit Court of Appeals.  Also, I understand that any appeal must be filed no more than fourteen (14) days from date of the judgment.

I waive the reading of the Superseding Indictment/Information **[Circle the appropriate title.]** in open Court, and I request the Court to enter my plea of "GUILTY" as set forth in this petition.

I swear that I have read, understood, and discussed with my attorney, each and every part of this Petition to Enter Plea of Guilty, and that the answers which appear in every part of this petition are true and correct.

Signed and sworn to by me in open court, in the presence of my attorney, this __5th__ day of __June__, 20 __24__

_____
Defendant

Subscribed and sworn to before me this _5th_ day of __June__ 20 24 .

_____
Deputy Clerk



## CERTIFICATE OF COUNSEL

The undersigned, as attorney and counselor for the defendant <u>Wesley Wayne hunter, Jr.</u> hereby certifies:

(1)  I have read and fully explained to the defendant the allegation(s) contained in the <u>Superseding Indictment/Information</u> **[Circle the appropriate title.]** in this case.

(2)  To the best of my knowledge and belief, the statements, representations and declarations made by the defendant in the foregoing petition are in all respects accurate and true.

I have further explained to my client the provisions of advisory guideline sentencing as established by Title 18 U.S.C. 3553 <u>et seq.</u> Although I have discussed with my client the maximum sentence imposed for the offense for which (s)he is charged, I have not promised, suggested or predicted a possible sentence. I have specifically advised my client that sentencing is left solely within the province of the Court.

My client fully understands that, for good cause shown, the Court may depart from the advisory guideline range or impose a non-guideline sentence and, further, that probation is not available as a sentencing alternative in most cases under advisory guideline sentencing. Also, my client fully understands that, whenever probation is a permissible sentencing alternative, it is exclusively within the Court's discretion to grant or deny probation.

(3)  The plea of "GUILTY" offered by the defendant accords with my understanding of the facts (s)he related to me and is consistent with my advice to the defendant.

(4)  In my opinion, the defendant's waiver of reading of the <u>Superseding Indictment/Information</u> **[Circle the appropriate title.]** in open court as provided in Rule 10 is voluntarily and understandingly made, and I recommend to the Court that the waiver be accepted by the Court.

(5)  In my opinion, the plea of "GUILTY" offered by the defendant in the petition is voluntarily and understandingly made. I recommend that the Court accept the plea of "GUILTY."

(6)  I have made no predictions or promises to the defendant concerning any sentence the Court may award, except as noted in the space below:

<u>I advised that the plea agreement is pursuant to Rule 11(c)(1)(C). If the Judge does not accept the agreement, then Mr. Hunter can withdraw his guilty plea. The most important parts of the agreement are that Counts 1&2 will be dismissed and the sentencing range is 41-70 months.</u>

(7)  I further represent to the Court that the defendant's plea of "GUILTY (is)(is not) **[Circle the appropriate response.]** the result of a plea agreement. The terms of the agreement are set out in the petition, and I have informed the defendant that the Court is not bound by the terms of the agreement, and that if the Court rejects the agreement, the Court will give him/her the opportunity to withdraw his/her plea of "GUILTY."

Signed by me in open court in the presence of the defendant above-named and after full discussion of the contents of this certificate with the defendant, this __5__ day of __June__, 2024.

_____
Attorney for the Defendant

## ORDER

I find that the plea of "GUILTY" was made by the defendant freely, voluntarily, and because (s)he is "GUILTY" as charged, and not out of ignorance, fear, inadvertence, or coercion, and with full understanding of its consequences. I further find that the defendant has admitted the essential elements of the crime(s) charged, that there is a factual basis for the plea(s) of "GUILTY," and that the defendant is mentally competent.

IT IS THEREFORE ORDERED that the defendant's plea(s) of "GUILTY" is accepted and entered as prayed for in the petition and as recommended in the certificate of his/her attorney.

Done in open court this _5th_ day of __June__, 20_24_.

_____
UNITED STATES DISTRICT JUDGE

# CANADIAN COUNTY SHERIFF'S OFFICE



**Chris West**
*Sheriff*

**Kevin L. Ward**
*Undersheriff*

TO          Deputy David Randall          DATE          October 5, 2023

FROM          Sheriff Chris West

SUBJECT          Discipline

This office received a complaint regarding personal and electronic communication between you and females who were both in and out of the custody or control of the county or state. The investigations division sustained those allegations, including your admissions that were consistent with the allegations.

None of their allegations nor your admissions involved physical contact. However, I won't tolerate your highly inappropriate activity as alleged above. Your actions were unprofessional and beneath the dignity of this office and the law enforcement profession.

Therefore, I am suspending you from duty for three unpaid days, requiring you to take a sexual harassment training course before December 31, 2023, approved by our training division, and effective October 9, 2023, a transfer from the civil division to the Children's Justice Center as a juvenile investigator, reporting to Lieutenant Pincher for further instructions and one-year probation.

This discipline is because your actions fell below the standards of my office. If this activity occurs again, you are subject to harsher punishment, including termination.

Chris West
Sheriff

Exhibit 5.pdf, Page 1 of 2

**Exhibit 2**

Office (405) 262-4787    •    208 West Rogers, El Reno, Oklahoma 73036    •    Fax (405) 422-...



# CANADIAN COUNTY SHERIFF'S OFFICE

**Chris West**
*Sheriff*

**Kevin L. Ward**
*Undersheriff*

To:    Deputy David Randall

Date:    March 28, 2024

From:  Sheriff Chris West

Subject: Termination

Your services are no longer needed at the Sheriff's Office.

Chris West
Sheriff

cc:    Personnel File

Exhibit 5.pdf, Page 2 of 2

Kevin L. Ward Exhibit 2

IN THE DISTRICT COURT OF THE FIFTH JUDICIAL DISTRICT OF THE STATE OF
OKLAHOMA SITTING IN AND FOR JEFFERSON COUNTY

THE STATE OF OKLAHOMA,                      )
                                            )
      Plaintiff,                       )
                                            )
vs.                                         )      Case No. CF-2022- 52
                                            )
DAVID WAYNE LOMAN                           )
                                            )          FILED
ADDR: 6601 S Cimarron                       )
      Yukon, OK 73099                  )        NOV 16 2022
DL:      ****                               )
SSN:     ***-**-6774                        )      KIM BERRY, COURT CLERK
DOB:     December, 1963                     )        JEFFERSON COUNTY
                                            )
      Defendant(s).                    )

### INFORMATION

**COUNT 1:**   SEXUAL BATTERY ~ 21 O.S. § 1123(B), a FELONY

**STATE OF OKLAHOMA, COUNTY OF JEFFERSON:**

     I, Jason M. Hicks, the undersigned District Attorney of said County, in the name and by the authority of the State of Oklahoma, give information that in said County of Jefferson and in the State of Oklahoma, **DAVID WAYNE LOMAN** did then and there unlawfully, willfully, knowingly and wrongfully commit the crime(s) of:

**COUNT 1:**   **SEXUAL BATTERY ~ a FELONY**, on or about the 7th day of April, 2022, by intentionally grasping and fondling the breasts of Kaci Fox, who was 31 years old at that time, in a lewd and lascivious manner and without the consent of Kaci Fox.

This crime is punishable by imprisonment for up to 10 years.

                                JASON M. HICKS
                                DISTRICT ATTORNEY

                                By: _____
                                John M. Weedn
                                Assistant District Attorney

### WITNESSES ENDORSED FOR THE STATE OF OKLAHOMA

PRESENTING/ARRESTING OFFICER: Tony Navarro

Tony Navarro, Special Agent, OSBI, 25 A St. NW, Ste. 130, Ardmore, OK 73401
Kaci Fox, c/o Law Enforcement
Edward Purcer, Sergeant, Canadian County Sheriff's Office, 304 N Evans Ave, El Reno, OK 73036
Charles Sharp, 404 East Main, Ringling, OK 73456

IN THE DISTRICT COURT OF THE FIFTH JUDICIAL DISTRICT
JEFFERSON COUNTY, STATE OF OKLAHOMA

**FILED**

**NOV 16 2022**

KIM BERRY, COURT CLERK
JEFFERSON COUNTY

THE STATE OF OKLAHOMA,          )
Plaintiff,                                        )
                                                      )
VS.                                                )          No. CF-2022-52
                                                      )
LOMAN, DAVID WAYNE               )
DOB:▉▉▉1963                             )
Defendant,                                     )

## PROBABLE CAUSE AFFIDAVIT FOR WARRANT OF ARREST

### THE UNDERSIGNED UPON OATH DEPOSES AND STATES AS FOLLOWS, TO WIT:

That your affiant is Tony Navarro, a certified and commissioned peace officer in and for the State of Oklahoma and is currently employed as a Special Agent for the Oklahoma State Bureau of Investigation (OSBI). Your affiant has been in law enforcement for approximately 14 years, primarily working as a University of Oklahoma police officer. Your affiant's training and education includes a Bachelor's degree in Political Science from the University of Central Oklahoma, and graduation from the State of Oklahoma Basic Peace Officer Academy, Advanced Peace Officer Certification, Basic Instructor Development, Advanced Traffic Collision Investigation and Reconstruction training, Advanced Homicide/Violent Crime Investigation training, and the OSBI Agent's Academy.

On April 12th, 2022, Kaci Fox, an inmate at the Canadian County Jail in El Reno, Oklahoma, filed a complaint with jail officials alleging that on April 7, 2022, Canadian County Sheriff's Office Deputy David Loman sexually battered and forcibly sodomized her during her transport from the Marshall County Jail to the Canadian County Jail. The Canadian County Sheriff's Office requested OSBI investigate the allegations against Loman.

On April 13th, 2022, your Affiant interviewed Fox. Fox stated that on the morning of April 7, 2022, Loman picked her up from the Marshall County Jail in Madill, Oklahoma in his silver, marked Canadian County Sheriff's Office Dodge Charger. After placing her in the front seat of his police vehicle, Loman left the Marshall County Jail and immediately pulled over into a car wash in Madill, where he sexually battered Fox. During this incident, Loman removed Fox's handcuffs, instructed Fox to remove her brassiere, and fondled Fox's breasts before driving westbound on US Highway 70.

Approximately 40 minutes later, in Carter County, Loman turned off US Highway 70 onto an oil lease site road and forcibly sodomized Fox before continuing westbound toward Waurika, Oklahoma. Loman was scheduled to pick up an additional male inmate at the Jefferson County Jail for transport back to Canadian County.

While driving to Waurika, Loman told Fox that he specifically requested and selected the Madill transport because he knew there was a female that needed to be picked up. Loman also shared his sexual fantasies with Fox and showed her pictures on his personal phone. Loman also told her that if anybody asked why he stopped, he would tell them he got lost, and that they would both be in trouble if she told anybody what happened.

After arriving at the Jefferson County Jail in Waurika, Loman parked his vehicle in the alley behind the west side of the jail and ensured Fox was put back into handcuffs. Before entering the jail, Loman grasped and fondled Fox's breasts, then left Fox unattended in the vehicle as he retrieved the male inmate. After securing the male inmate in the backseat of his police vehicle, Loman drove from Waurika to El Reno. During the trip north on US Highway 81, the male inmate observed Loman's right hand resting on Fox's left leg, and saw that Fox was unhandcuffed for most of the journey. Upon arrival at the Canadian County Jail, Fox retrieved her brassiere from the floor board of the vehicle and Loman had her place it in her property bag in the trunk of his vehicle.

On April 15th, 2022, your Affiant obtained relevant recorded surveillance video from the Jefferson County Jail. The Jefferson County Jail video showed Loman arriving at approximately 9:52 A.M. on April 7th, 2022, and initially parking his vehicle facing north in the alley on the west side of the jail. Loman is seen opening Fox's front passenger side door and reaching into her compartment for approximately 10 seconds before closing the door again. Loman then repositioned his vehicle so that it was facing south in the alley, parked it, and entered the Jefferson County Jail, leaving Fox unattended in the front passenger seat.

The repositioning of the vehicle allowed its windshield and front seats to come into the camera's field of view, and enabled Fox's left forearm to be visible inside. While Loman was inside the Jefferson County jail, Fox did not appear to make any furtive movements while seated in the front seat. Loman later exited the jail with the male inmate, placed him in the rear seat of the vehicle, and drove away.

On April 22nd, 2022, your Affiant interviewed Loman, who had resigned from the Canadian County Sheriff's Office immediately prior to the interview. Loman admitted to stopping his vehicle in both Madill and Carter County before driving to the Jefferson County Jail in Waurika. Loman admitted that he removed Fox's handcuffs during the drive to Waurika, that he and Fox engaged in conversation of a sexual nature, and that Fox was put back in handcuffs prior to their arrival at the Jefferson County Jail. Loman also acknowledged that Fox was not wearing a brassiere upon their arrival at the Canadian County Jail.

Loman could not explain how or why Fox's brassiere was removed from her body during the transport, other than to suggest that Fox removed it while she was unattended in his vehicle outside the Jefferson County Jail. When pressed further by investigators, Loman invoked his right to counsel and ended the interview. After leaving the interview, Loman was given a ride to his residence by a Canadian County Sheriff's Deputy. While in the Deputy's vehicle, Loman spontaneously exclaimed that he "was going to jail," he "needed to get an attorney," and that he was "in a bad, bad, bad, way/spot."

Exhibit 6.pdf, Page 3 of 4

# Exhibit 2

Your Affiant believes that, on April 7th, 2022, while employed as a Canadian County Sheriff's Deputy, David Wayne Loman sexually battered Kaci Fox, who was at that time in the custody of the Canadian County Sheriff's Office as a transported inmate, and that Loman engaged in that act while in Jefferson County, particularly while located outside the Jefferson County Jail in Waurika.

Based on this information, your Affiant prays that this Honorable Court issue a finding of fact that probable cause exists to believe that the crime of **Sexual Battery** (Oklahoma Statute Title 21, Chapter 45, Section 1123 B.2) has been committed, and that there is probable cause to believe that David Wayne Loman, the defendant, committed that crime.

OSBI Special Agent Tony Navarro
Affiant

SUBSCRIBED AND SWORN TO BEFORE ME THIS __16th__ DAY OF _November_ 2022

NOTARY PUBLIC
My commission expires: _06/06/26_
My commission number: _22007871_

## FINDING OF PROBABLE CAUSE

THE UNDERSIGNED JUDGE OF THIS COURT, UPON SWORN TESTIMONY AND/OR AFFIDAVIT, HEREBY DETERMINES THERE TO BE PROBABLE CAUSE TO ARREST/ DETAIN THE DEFENDANT(S).

DATED THIS __16__ DAY OF __Nov__, 2022

JUDGE OF THE DISTRICT COURT

Exhibit 6.pdf, Page 4 of 4

# Exhibit 2

IN THE DISTRICT COURT OF THE FIFTH JUDICIAL DISTRICT OF THE STATE OF
OKLAHOMA SITTING IN AND FOR JEFFERSON COUNTY

THE STATE OF OKLAHOMA,                )
                                      )
            Plaintiff,                )
                                      )
vs.                                   )        Case No. CF-2022-52
                                      )
DAVID WAYNE LOMAN                     )
                                      )
ADDR:  ████████████                   )
       Yukon, OK 73099                )               FILED
DL:    ****                           )
SSN:   ***-**-6774                    )           OCT 06 2023
DOB:   December, 1963                 )
                                      )         KIM BERRY, COURT CLERK
            Defendant(s).             )            JEFFERSON COUNTY

### AMENDED INFORMATION

COUNT 1:    SEXUAL BATTERY ~ 21 O.S. § 1123(B), a FELONY
COUNT 2:    PATTERN OF CRIMINAL OFFENSES ~ 21 O.S. § 425, a FELONY

STATE OF OKLAHOMA, COUNTY OF JEFFERSON:

        I, Jason M. Hicks, the undersigned District Attorney of said County, in the name and by the authority of the
State of Oklahoma, give information that in said County of Jefferson and in the State of Oklahoma, DAVID WAYNE
LOMAN did then and there unlawfully, willfully, knowingly and wrongfully commit the crime(s) of:

COUNT 1:    SEXUAL BATTERY ~ a FELONY, on or about the 7th day of April, 2022, by intentionally grasping
and fondling the breasts of Kaci Fox, who was 31 years old at that time, in a lewd and lascivious manner and
without the consent of Kaci Fox.

This crime is punishable by imprisonment for up to 10 years.

COUNT 2:    PATTERN OF CRIMINAL OFFENSES ~ a FELONY, on or between the 30th day of August, 2021,
and the 7th day of April, 2022, by engaging in a pattern of criminal offenses in Pottawatomie County, Oklahoma
County, Canadian County, Jefferson County, Marshall County and Carter County where 2 or more crimes involved
in the same plan, scheme, or adventure were committed across the counties.

This crime is punishable by imprisonment for 2 years in DOC or 1 year in the County Jail and a $25,000 Fine.

                                      JASON M. HICKS
                                      DISTRICT ATTORNEY

                                      By: _____
                                          John M. Weedn
                                          Assistant District Attorney

### WITNESSES ENDORSED FOR THE STATE OF OKLAHOMA

PRESENTING/ARRESTING OFFICER: Tony Navarro

Tony Navarro, Special Agent, OSBI, 26 A St. NW, Ste. 130, Ardmore, OK 73401
Kaci Fox, c/o Law Enforcement
Edward Purcer, Sergeant, Canadian County Sheriff's Office, 304 N Evans Ave, El Reno, OK 73036
Charles Sharp, 404 East Main, Ringling, OK 73456
Jennifer Clark, c/o Law Enforcement

## Exhibit 2

IN THE DISTRICT COURT OF THE FIFTH JUDICIAL DISTRICT OF THE STATE OF
OKLAHOMA SITTING IN AND FOR JEFFERSON COUNTY

THE STATE OF OKLAHOMA,      )
                                            )

        Plaintiff,                )

vs.                                     )      Case No. CF-2022-52

DAVID WAYNE LOMAN      )

ADDR: 6601 S Cimarron      )       # F I L E D
          Yukon, OK 73099      )
DL:      ****                    )
SSN:  ***-**-6774          )       DEC 2 7 2023
DOB:  December, 1963     )
                                      )    KIM BERRY, COURT CLERK
        Defendant(s).      )       JEFFERSON COUNTY

### 2nd AMENDED INFORMATION

COUNT 1:    SEXUAL BATTERY ~ 21 O.S. § 1123(B), a FELONY
COUNT 2:    PATTERN OF CRIMINAL OFFENSES ~ 21 O.S. § 425, a FELONY
COUNT 3:    FORCIBLE SODOMY ~ 21 O.S. § 888, a FELONY
COUNT 4:    RAPE BY INSTRUMENTATION ~ 21 O.S. § 1111.1, a FELONY

**STATE OF OKLAHOMA, COUNTY OF JEFFERSON:**

    I, Jason M. Hicks, the undersigned District Attorney of said County, in the name and by the authority of the State of Oklahoma, give information that in said County of Jefferson and in the State of Oklahoma, **DAVID WAYNE LOMAN** did then and there unlawfully, willfully, knowingly and wrongfully commit the crime(s) of:

**COUNT 1:**    **SEXUAL BATTERY ~ a FELONY**, on or about the 7th day of April, 2022, by defendant, David Loman, a state/county employee/contractor of the state or a county of Oklahoma, by intentionally grabbing, and fondling the breasts of Kaci Fox, who was 31 years old at that time, in a lewd and lascivious manner, and who was under the custody, control, authority of a state/county or other subdivision of the State of Oklahoma.

This crime is punishable by imprisonment for up to 10 years.

**COUNT 2:**    **PATTERN OF CRIMINAL OFFENSES ~ a FELONY**, on or between the 30th day of August, 2021, and the 7th day of April, 2022, by engaging in a pattern of criminal offenses in Jefferson County, Marshall County and Carter County where 2 or more crimes involved in the same plan, scheme, or adventure were committed across the counties.

This crime is punishable by imprisonment for 2 years in DOC or 1 year in the County Jail and a $25,000 Fine.

**COUNT 3:**    **FORCIBLE SODOMY ~ a FELONY**, on or about the 7th day of April, 2022, by defendant, David Loman, a state/county employee/contractor of the state or a county of Oklahoma, engaging in penetration of the mouth of Kacie Fox, who was 31 years old at the time, and  who was under the custody, control, authority of a state/county or other subdivision of the State of Oklahoma.

This crime is punishable by imprisonment for up to 20 years.

**COUNT 4:**    **RAPE BY INSTRUMENTATION ~ a FELONY**, on or about the 7th day of April, 2022, by using a finger to penetrate the body Part of Kaci Fox, who was 31 years old at the time and was under the custody, control, authority of a state/county or other subdivision of the State of Oklahoma, and said defendant being a state/county employee/contractor of the state or a county of Oklahoma, and not being married to the victim. The defendant was then 59 years old, having been born on December 14, 1963.

This crime is punishable by imprisonment for 1 to 15 years.

JASON M. HICKS
DISTRICT ATTORNEY

By: 
John M. Weedn
Assistant District Attorney

## WITNESSES ENDORSED FOR THE STATE OF OKLAHOMA

PRESENTING/ARRESTING OFFICER: Tony Navarro

Tony Navarro, Special Agent, OSBI, 25 A St. NW, Ste. 130, Ardmore, OK 73401
Kaci Fox, c/o Law Enforcement
Edward Purcer, Sergeant, Canadian County Sheriff's Office, 304 N Evans Ave, El Reno, OK 73036
Charles Sharp, 404 East Main, Ringling, OK 73456
Jennifer Clark, c/o Law Enforcement