**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| KRISTINA CRIST, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | **Case No. CIV-25-1446-R** |
| | ) | |
| ROY CHRIS WEST, et al., | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

This action arises from a sexual assault perpetuated by Defendant Wesley Wayne Hunter while he was working as a Canadian County Sheriff's deputy. Roy Chris West, the Sheriff of Canadian County, is also named as a defendant in his individual and official capacity. Now before the Court is Defendant West's Partial Motion to Dismiss [Doc. No. 5]. Plaintiff filed an untimely response in opposition [Doc. No. 12],[1] and Defendant West replied [Doc. No. 15].

### *Factual Background*

In her Amended Complaint,[2] Plaintiff alleges that she was arrested on a Canadian County arrest warrant and booked into the Bryan County Jail. Am. Pet. [Doc. Nos. 1-10 and 1-11] 30-32.[3] Three days later, on July 20, 2023, Defendant Hunter, a deputy with the

---

[1] The Court previously ordered Plaintiff's counsel to show cause as to why she should not be sanctioned for her use of nonexistant or misleading case citations. The Court held a hearing on March 31, 2026 and will resolve those issues in a separate order.

[2] The case was initiated in state court via a petition and removed on the basis of federal question jurisdiction. Consistent with the nomenclature used in federal court, the operative pleading is referred to as the Amended Complaint.

[3] The Amended Complaint is 63 pages long and includes 384 separately numbered paragraphs, many of which are duplicative or unnecessary. The Court has reviewed the Amended Complaint in full, but only

Canadian County Sheriff's Office, volunteered to transport Plaintiff from Bryan County to Canadian County. *Id.* ¶ 33. During the transport, Hunter turned off his GPS monitoring device, drove to a deserted area, and raped Plaintiff while she was handcuffed and pressed against the side of the vehicle. *Id.* ¶¶ 35-40, 46-47. Hunter made statements indicating that this was not the first time he sexually assaulted a detainee and he threatened to hurt Plaintiff's daughter if she reported the rape. *Id.* ¶¶ 41, 48. Hunter was eventually arrested, charged with various crimes stemming from the incident, and entered a plea of guilty to, among other things, rape in the second degree. *Id.* ¶¶ 63-77.

This was not the first time a Canadian County Sheriff's deputy sexually assaulted a detainee. The Amended Complaint identifies three specific, prior instances, two of which involve the same perpetrator: a 2021 sexual assault during transport by Deputy Loman, a 2022 sexual assault during transport by Deputy Loman, and a 2021 sexual assault at the jail by Deputy Benson. *Id.* ¶¶ 78-80. The Amended Complaint also alleges that "[o]ther allegations" of "sexual improprieties with inmates" have been made against deputies and that Sheriff West encourages his subordinates to engage in sexual impropriety in the work setting. *Id.* ¶¶ 83, 241-42. Sherrif West also allegedly employed multiple individuals who were previously accused of sexual misconduct or failed to take appropriate action against employees that engaged in sexually inappropriate behavior on the job. *Id.* ¶ 244. Sheriff West was allegedly told that a lack of vehicle cameras, body cameras, and reliable GPS

---

summarizes the alleged facts. Additional facts that are pertinent to the legal issues are discussed further below.

tracking presents a risk to inmates, but he refused to remedy the issues. *Id.* ¶¶ 103, 248, 259.

Based on these allegations, Plaintiff asserts claims under 42 U.S.C. § 1983 against Defendant Hunter for "excessive force/bodily integrity,"[4] violation of her substantive due process rights, and violation of her equal protection rights. She asserts claims under § 1983 against Defendant West for violation of her equal protection rights, "supervisory liability," and municipal liability. Plaintiff also asserts a claim against Defendants Hunter and West for violation of the Trafficking Victims Protection Reauthorization Act (TVPRA), 18 U.S.C. § 1591. Last, Plaintiff asserts state law claims for "civil sexual assault and battery" against Defendant Hunter and negligence against Defendant West.

Defendant West moves for dismissal under Fed.R.Civ.P. 12(b)(6), arguing that Plaintiff has failed to state a claim under § 1983 or the TVPRA against Defendant West in his individual capacity and failed to state any actionable claim under state law.

### *Standard of Decision*

To survive a motion to dismiss under Rule 12(b)(6), a pleading must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although

---

[4] Plaintiff identifies the right to bodily integrity as rooted in either the Fourth, Eighth, or Fourteenth Amendment. She states that she is pleading in the alternative because there is a split on whether a person held on probation violations is considered a pretrial detainee covered by the Fourteenth Amendment or a convicted inmate covered by the Eighth Amendment.

a pleading "does not need detailed factual allegations," it does require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (2007). All well-pleaded factual allegations are accepted as true and viewed in the light most favorable to the plaintiff. *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007).[5]

## *Discussion*

### A. Section 1983 Claims

Defendant West argues that Plaintiff has failed to state a § 1983 claim because she has not plausibly alleged his personal participation in a constitutional violation.[6] "A § 1983 defendant sued in an individual capacity may be subject to personal liability and/or

---

[5] When assessing a complaint's sufficiency, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (citing 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2004 and Supp. 2007)). The Court therefore evaluates the claims in light of the allegations in the Amended Complaint and matters of which it may take judicial notice, but does not consider any additional allegations included in Plaintiff's response brief.

[6] Generally, the "first task in any § 1983 suit alleging a constitutional violation is 'to isolate the precise constitutional violation with which [the defendant] is charged.'" *Porro v. Barnes*, 624 F.3d 1322, 1325 (10th Cir. 2010) (quoting *Baker v. McCollan*, 443 U.S. 137 140 (1979)). Plaintiff references the Fourth, Eighth, and Fourteenth Amendments in her pleading, but neither Plaintiff nor Defendant West isolate the source of the alleged constitutional violation in their briefing. Plaintiff also asserts a claim for violation of the Fourteenth Amendment's equal protection clause, but neither party directly addresses this claim. In any event, the Tenth Circuit treats claims alleging sexual abuse of a prisoner "as a species of excessive-force claim." *Graham v. Sheriff of Logan Cnty.*, 741 F.3d 1118, 1126 (10th Cir. 2013). "Excessive force claims can be maintained under the Fourth, Fifth, Eighth, or Fourteenth Amendment—all depending on where the defendant finds himself in the criminal justice system[.]" *Porro*, 624 F.3d at 1325. Plaintiff's Amended Complaint asserts that she was in custody on alleged probation violations and new charges. Am. Compl. ¶ 271. Given those limited facts, and without any argument from the parties suggesting otherwise, the Court believes that Plaintiff's "claim for excessive force while detained on a probation violation should be considered under the Eighth Amendment." *Clark v. Canadian Cnty. ex rel. Bd. of Cnty. Commissioners*, No. CIV-24-1241-SLP, 2025 WL 2793741, at *6 (W.D. Okla. Sept. 30, 2025). Regardless, it is well established that "an inmate has a constitutional right to be secure in her bodily integrity and free from attack by prison guards" and "a prison official's failure to protect an inmate from a known harm may constitute a constitutional violation." *Hovater v. Robinson*, 1 F.3d 1063, 1068 (10th Cir. 1993).

4

supervisory liability." *Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011). Plaintiff's § 1983 claim against Defendant West is premised on the latter – she does not allege that he personally participated in the sexual assault, but rather that his deficient policies, training, and supervision of subordinates caused the constitutional violation.

A § 1983 claim based on supervisory liability does not equate to vicarious liability and cannot be based on "mere knowledge of [a] subordinate's conduct." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013). Rather, as with any individual § 1983 defendant, "the plaintiff must establish a deliberate, intentional act on the part of the defendant to violate the plaintiff's legal rights." *Porro*, 624 F.3d at 1327–28 (internal quotation marks, brackets, and citation omitted).

"This notion is embodied in the three elements required to establish a successful § 1983 claim against a defendant based on his or her supervisory responsibilities: (1) personal involvement; (2) causation, and (3) state of mind." *Schneider*, 717 F.3d at 767 (10th Cir. 2013). A supervisor's personal involvement may be shown "by establishing the supervisor promulgated, created, implemented, or possessed responsibility for the continued operation of a policy, or the establishment or utilization of an unconstitutional policy or custom, provided the policy or custom resulted in a violation of the plaintiff's constitutional rights." *Burke v. Regalado*, 935 F.3d 960, 997 (10th Cir. 2019). (internal quotation marks, brackets, and citations omitted). "The second element requires the plaintiff to show that the defendant's alleged action(s) caused the constitutional violation by setting in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights." *Id*. (quoting

*Est. of Booker v. Gomez*, 745 F.3d 405, 435 (10th Cir. 2014)). The final element requires the plaintiff to show that the supervisor acted with a culpable state of mind. *Id*. at 997. Here, the state of mind is deliberate indifference, which requires proof that "the official kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008) (quotation marks omitted).

Defendant West argues, in a somewhat perfunctory manner, that Plaintiff has not plausibly alleged these requirements because the Amended Complaint is devoid of any specific, non-conclusory allegation of fact indicating that he was deliberately indifferent to a substantial risk that deputies of the Canadian County Sheriff's Office would sexually assault female inmates during transportation. The Amended Complaint alleges that Sheriff West had knowledge of three specific prior sexual assaults, two of which are factually similar to the allegations in this case. The Amended Complaint also alleges that "[between 2021 and 2024, multiple other pretrial and post-trial detainees reported being sexually harassed and/or sexually assaulted by Canadian County Deputies" and that Sheriff West "encourages his Deputies to engage in sexual impropriety, particularly while in a work setting." Am. Compl. ¶¶ 127, 242. Additionally, Defendants allegedly had a well-settled practice of transporting female detainees in the front seat of police vehicles and Sheriff West was advised that the lack of consistent GPS monitoring and cameras in vehicles "created a risk to inmates and Officers." *Id*. ¶¶ 103, 246, 248, 259. Plaintiff has also identified several specific individuals that Sheriff West allegedly hired or retained despite allegations that they engaged in sexually inappropriate behavior while on the job. *Id*. ¶ 244. Although the evidence may ultimately show something quite different, the Court is

constrained at this stage to accept these allegations as true and construe them in Plaintiff's favor.

In evaluating whether these allegations are sufficient to state a plausible claim, the Tenth Circuit's analysis in *Keith v. Koerner*, 707 F.3d 1185, 1187 (10th Cir. 2013) (*Keith I*), is instructive. In *Keith I*, an inmate that was sexually assaulted by a prison employee brought a § 1983 claim against the warden of the prison alleging that he allowed a policy or culture of sexual misconduct at the prison which placed her at substantial risk of harm. *Id.* at 1187. The warden moved for dismissal on the basis of qualified immunity, prompting the Tenth Circuit to consider whether the allegations were sufficient to state a plausible supervisory liability claim. *Id.* at 1188. The Tenth Circuit concluded that the plaintiff had "nudged her claims beyond the conceivable to the plausible" by pointing to numerous prior incidents of sexual misconduct at the jail, inconsistent or nonexistent discipline in response to these complaints, and structural problems (including insufficient use of cameras to monitor inmates and staff) that made the jail ripe for misconduct. *Id.* at 1189. Further, the Tenth Circuit was unpersuaded by the warden's argument that the disciplinary inconsistencies involved factually distinct scenarios or that the investigation of the prior sexual misconduct incidents demonstrated a reasonable response, explaining that these arguments "involve issues of admissibility and of what inferences to draw from the facts." *Id.* at 1188-89.

Although decided at the summary judgment stage, *Tafoya*, 516 F.3d at 912, is also helpful. The plaintiff in *Tafoya* was sexually assaulted by a jail employee during her incarceration. *Id.* at 914. In response to two prior sexual assaults by prison staff, the county

sheriff implemented some additional safety measures at the jail, including installing more surveillance cameras and hiring more female staff. *Id.* at 915-916. The Tenth Circuit found that the reasonableness of these remedial efforts presented a genuine factual dispute when considered against the plaintiff's evidence, which included evidence that the sheriff employed detention officers with criminal records, had knowledge that a lack of surveillance cameras presented risks to inmates, and failed to address the "anything-goes" culture among his detention officers. *Id.* at 919-920. The Tenth Circuit also concluded that, although the jail employee that sexually assaulted the plaintiff did not have a history of sexual misconduct, there was a genuine factual dispute as to whether the sheriff's deficient management of the jail proximately caused the assault.  *Id.* at 922.

Here, as in *Keith I*, the Amended Complaint includes factual allegations indicating that Sheriff West had prior knowledge of sexual misconduct by deputies (including two sexual assaults that are factually similar to the one at issue), his response to employees engaging in sexual misconduct at work was inconsistent, and he was made aware that specific deficiencies – i.e. the lack of adequate monitoring in vehicles – presented a risk to female inmates. And, similar to *Tafoya*, there are allegations that Sheriff West inappropriately employed individuals with a history of sexual misconduct, was informed of risks associated with the lack of monitoring in vehicles, and not only tolerated but in fact encouraged sexual impropriety at work. Admittedly, the facts in *Keith I* and *Tafoya* appear, at least in some ways, more egregious than the what is alleged here. But reading the Amended Complaint as a whole, the Court concludes that there is sufficient factual content to raise a plausible inference that Sheriff West knew of and disregarded an

8

excessive risk to inmate safety that is causally connected to Plaintiff's underlying constitutional violation. Sheriff West's argument that his response to the reports of sexual assault belies any suggestion that he acted in a deliberately indifferent manner or that the past violations were conducted by a limited number of bad actors is unpersuasive at this stage, where the allegations and inferences must be construed in Plaintiff's favor.

In seeking dismissal, Defendant West also invokes the defense of qualified immunity, arguing that Plaintiff cannot show that his alleged actions violated a clearly established right. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks and citation omitted). When the defense of qualified immunity has been raised at the motion to dismiss stage, the onus is on the plaintiff to demonstrate "(1) whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and (2) whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Keith I*, 707 F.3d at 1188 (internal quotation marks omitted). "The law is clearly established when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as plaintiff maintains." *Dodds v. Richardson*, 614 F.3d 1185, 1206 (10th Cir. 2010) (quotation omitted). In applying this standard, courts must ensure that the clearly established law is "particularized to the facts of the case" and not defined "at a high level of generality." *White v. Pauly*, 580 U.S. 73, 79 (2017) (internal quotation marks omitted).

As to the first step of the qualified immunity analysis, for the reasons explained above, Plaintiff's allegations are sufficient to plausibly allege that Sheriff West personally violated her constitutional rights. As to the second step, clearly established law would have put a reasonable official in Sheriff's West position on notice that his supervisory conduct – as alleged in the Amended Complaint – violated Plaintiff's constitutional rights. "As an initial matter, it is clearly established that a prison official's deliberate indifference to sexual abuse by prison employees violates the Eighth Amendment." *Keith I*, 707 F.3d at 1188. In *Tafoya*, 516 F.3d at 915-921, the jail official's supervisory conduct was sufficient to establish a constitutional violation where he was not only aware of a general risk of assault by jail employees, but had actual knowledge of prior sexual assaults and did not adequately remedy those risks. Similarly, in *Keith v. Koerner*, 843 F.3d 833, 849-50 (10th Cir. 2016) (*Keith II)*, the jail supervisor's limited investigation and lax discipline in response to systemic misconduct (which included a range of sexually inappropriate behavior) violated the plaintiff's "constitutional right to expect reasonable protection from [jail] officials."

Here, the allegations raise a plausible inference that Sheriff West had knowledge of specific risks to inmates associated with the lack of cameras and GPS monitoring on vehicles, that risk had previously materialized in the form of a sexual assault that is factually similar to the one at issue here, and Sheriff West failed to remedy the risk. Moreover, there are allegations that Sheriff West encouraged an atmosphere that heightened the risk of sexual misconduct. Although not identical, the facts in *Tafoya* and *Keith II* would have put a reasonable supervisor on notice that promoting (or at least

10

tolerating) widespread sexual impropriety amongst employees and failing to remedy the deficiencies that contributed to a prior sexual assault violated a clearly established constitutional right. Taking Plaintiff's factual allegations as true, the Court finds that Sheriff West is not entitled to qualified immunity at this stage.

## B. TVPRA Claims

Sheriff West next argues that Plaintiff has failed to state a plausible claim against him under the Trafficking Victims Protection Reauthorization Act. "The TVPRA provides a civil cause of action for victims of any crime under chapter 77 of title 18 of the U.S. Code." *Bistline v. Parker*, 918 F.3d 849, 870 (10th Cir. 2019) (citing 18 U.S.C. § 1595). Plaintiff's TVPRA claim alleges that she was subjected to a violation of 18 U.S.C. § 1591, which prohibits sex trafficking by force, fraud, or coercion. Section 1591(a) states

> (a) Whoever knowingly—
>
> > (1) in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or
> >
> > (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),
>
> knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

As stated in parts (a)(1) and (a)(2), "[o]ne can violate the statute either as a primary offender or simply by benefiting financially from participation in a 'venture' with the primary offender." *Bistline*, 918 F.3d at 871. Plaintiff's claim against Sheriff West is premised on his alleged participation in a "venture" with Defendant Hunter whereby Sheriff West, or Canadian County, benefited financially from allowing the transportation of female inmates that were forced, threatened, or coerced into performing a commercial sex act.

Sheriff West argues that Plaintiff's TVPRA claim fails as a matter of law because the facts alleged do not involve a "commercial sex act." The statute defines "commercial sex act" as "any sex act, on account of which anything of value is given to or received by any person." 18 U.S.C. § 1591(e)(3). Courts have interpreted this definition broadly and recognized that it reaches tangible as well intangible benefits. *See United States v. Raniere,* 55 F.4th 354, 361 (2d Cir. 2022). Importantly, the statutory language requires "a causal connection between the sexual act and the giving or receiving of anything of value." *Id.* at 365.

After setting aside Plaintiff's conclusory allegations, there are no well-pleaded facts indicating that anyone was given anything of value on account of the sexual act Plaintiff was forced to perform. Plaintiff alleges that Defendant West "engaged in grooming behaviors prior to the assault designed to disarm [Plaintiff] including buying [Plaintiff] food and drinks." Am. Compl. ¶ 37. A similar allegation was made in *Clark v. Canadian Cnty. ex rel. Bd. of Cnty. Commissioner*s, No. CIV-24-1241-SLP, 2025 WL 2793741, at *12-13 (W.D. Okla. Sept. 30, 2025), which also involved TVPRA claims asserted against

12

Sheriff West and which was brought by Plaintiff's same counsel on behalf of another victim. The Court in *Clark* found that the allegation that the officer purchased the victim a soda before sexually assaulting her did not plausibly allege a causal connection between the soda and the sex act. *Id.* So too here. The allegations do not plausibly show that Defendant Hunter purchased Plaintiff food or drinks, or anything of value, "on account of" the sex act. Plaintiff has therefore failed to state a claim against Sheriff West for violation of the TVPRA.

## C. State Law Claims

Last, Sheriff West argues that Plaintiff has failed to state any actionable claim against him under state law because he is immune pursuant to the Oklahoma Governmental Tort Claims Act, Okla. Stat. tit. 51, § 151, et seq. The OGTCA provides that a political subdivision shall not be liable if a loss results from the "[p]rovision, equipping, operation or maintenance of any prison, jail or correctional facility." Okla. Stat. tit. 51, § 155(25). This immunity provision applies to the claim asserted against Sheriff West, which is premised on his "alleged failures, policies, practices, and procedures in relation to [his] operation and maintenance of a correctional facility." *Garland v. Oklahoma Dep't of Corr.*, No. CIV-20-306-RAW, 2021 WL 3007252, at *4 (E.D. Okla. July 15, 2021). Further, the OGTCA provides that a political subdivision shall not be liable "for any act or omission of an employee acting outside the scope of the employee's employment." Okla. Stat. tit. 51, § 153(A). Defendant Hunter's act of committing sexual assault is plainly outside the scope of his employment, and Sheriff West (in his official capacity) is therefore not vicariously liable for Defendant Hunter's conduct.

13

*Conclusion*

As outlined above, Defendant West's Partial Motion to Dismiss [Doc. No. 5] is GRANTED in part and DENIED in part. The claims asserted against Defendant West under the TVPRA and state law are dismissed without prejudice.

IT IS SO ORDERED this 7th day of May, 2026.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE

14